[No. G037146. Fourth Dist., Div. Three. July 18, 2007.]

CHARLES KINNEY, Cross-complainant and Appellant, v.
SHERRIE OVERTON, Cross-defendant and Respondent.

COUNSEL

Charles G. Kinney, in pro. per., for Cross-complainant and Appellant.

Marcus, Watanabe, Snyder & Dave, Patricia M. Snyder and Daniel J. Enowitz for Cross-defendant and Respondent.

OPINION

MOORE, J.—A residential subdivision in Laguna Beach is plagued with litigation involving a morass of legal issues and a plethora of parties—both public and private. The litigation was commenced by Three Arch Bay District against the City of Laguna Beach, Charles Kinney (Kinney) and numerous other parties. (*Three Arch Bay District v. City of Laguna Beach* (Super. Ct. Orange County, No. 01CC15035).) Kinney, a homeowner in the subdivision and a lawyer, filed a cross-complaint and a number of amended cross-complaints, against the State of California, homeowner Sherrie Overton (Overton), and many other parties.

Tiny portions of the litigation have been separated out one by one, bifurcated, and set for trial, in order, we presume, to make an unwieldy ball of wax just a little bit smaller. Those tiny portions have come to us in isolation, one appeal at a time. But Kinney, as one of the primary protagonists in the litigation, keeps complaining that the courts never slay the dragon and put the beast to rest. However, if the litigation is continually brought to us in bits and pieces, we can only address bits and pieces. We cannot address matters that are outside of the record on appeal or issues that do not arise from the portion of the litigation underlying the appeal in question. (*CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 539, fn. 1 [8 Cal.Rptr.3d 927]; *People v. National Auto. & Cas. Co.* (1966) 242 Cal.App.2d 150, 153 [51 Cal.Rptr. 212].) When all of the parties and issues are not put before this court, and we are not provided with all of the evidence necessary to finally address and resolve all ills, it is not possible for us to slay the dragon. Unless and until Kinney or another party to the litigation drags the entire beast before this court, we will continue to provide answers piecemeal—one talon at a time.

In the first appeal (*Kinney v. State of California* (Apr. 8, 2005, G032629) [nonpub. opn.]) arising out of the litigation, we addressed whether the State of California could be compelled to take title to Lot Q of the subdivision by way of escheat. At the conclusion of oral argument on that matter, we referred the parties to this court's judicial settlement program. After nearly a year, however, settlement efforts had failed, so we rendered an opinion, to the effect that the state could not be compelled to take title to that lot.

In the second appeal, this court addressed whether the trial court properly granted summary judgment in favor of Three Arch Bay District and against homeowner Carola Lueder, on account of her failure to comply with the Tort Claims Act (Gov. Code, § 810 et seq.) in bringing her claim against the district. (*Lueder v. Three Arch Bay Dist.* (Oct. 18, 2005, G033863) [nonpub. opn.].) We affirmed the summary judgment.

Now, Kinney comes before us in this third appeal arising out of the litigation. This appeal pertains to Kinney's cross-complaint against Overton, who fenced in a portion of Lot G of the subdivision (the Lot G Property). The trial court granted a Code of Civil Procedure section 631.8 motion for judgment in favor of Overton, and thereby put an end to Kinney's cross-complaint against her. The ruling prompted Kinney to file this third appeal.

After judgment was entered in favor of Overton, Kinney filed a motion to tax costs, which was denied. Kinney then filed a notice of appeal from the denial order, thus giving rise to a fourth appeal. (*Kinney v. Overton*

(G037708, app. pending, argued May 22, 2007).) That fourth appeal is currently pending before this court.

In this third appeal, Kinney claims the trial court erred in granting Overton's Code of Civil Procedure section 631.8 motion. At trial, Overton asserted Kinney had not demonstrated that he had any interest in the Lot G Property as necessary to maintain any of his causes of action against her, and that, in any event, his predecessors in title had failed to preserve any interest they may have had by recording a notice of claim of easement pursuant to former section 812 of the Civil Code after Orange County abandoned the Lot G Property in 1970. The court agreed. As we shall show, substantial evidence supports the court's findings, and the court made no errors of law in its application of former section 812. We affirm.

In so doing, we do not address the state of the title with respect to the Lot G Property and do not address what interest, if any, Overton may have in that property. The determination of those issues is unnecessary to the resolution of this appeal. Furthermore, the record on appeal does not contain adequate evidence for us to determine those issues in any event.

I

FACTS

In 2001, Kinney acquired certain real property located in Laguna Beach, California. The deed by which he acquired the property provided the following legal description: "Lot 653 of Tract 849, in the City of Laguna Beach, County of ORANGE, California as per map recorded in Book 25, Page(s) 43–45, of Miscellaneous Maps in the Office of the County Recorder of said County," subject to a designated exception. The deed contained no express easement over any streets or rights of way. However, the map of Tract No. 849 designated individual residential lots by number and designated elongated connecting lots by letter.

Kinney's lot abuts Lot Q as shown on the map. Lot Q is known as Virginia Way. Kinney testified that he has access to his property from Lot Q. Lot Q intersects Lot G, which is known as Sunset Avenue as it proceeds to the north, or 11th Avenue, as it proceeds to the southwest towards Pacific Coast Highway. Kinney can use Virginia Way and Sunset Avenue to access other streets, including Lot P on the map, also known as 10th Street, and Lot O on the map, also known as 9th Street. He can access Pacific Coast Highway through 9th and 10th Streets, if he chooses, provided the narrow streets in the subdivision are not temporarily blocked with garbage trucks or other vehicles.

However, Kinney cannot access Pacific Coast Highway via the portion of Lot G, i.e. 11th Avenue, bordering thereon. Access from that portion of Lot G has been blocked since at least 1993 or 1994. Dense vegetation covered the area from at least that time and for many years thereafter.

Overton has resided on property bordering on Lot G since 1993 or 1994. In 2001, she purchased the property on which she had been living. Sylvia Sternberg, whose property also bordered on Lot G, then quitclaimed any interest she had in Lot G to Overton. At that time, Overton had the Lot G Property cleared of vegetation. She also obtained a building permit and erected a fence. Overton's fence blocks access to Pacific Coast Highway across Lot G.

Kinney filed a fifth amended cross-complaint against Overton, asserting causes of action for nuisance, trespass and quiet title. His cause of action for quiet title included a request for declaratory relief as to the ownership of the Lot G Property and the existence of easements across that property in favor of homeowners in the subdivision. He claimed that Overton had wrongly denied him the use of the Lot G Property for ingress and egress. The cross-complaint against Overton was bifurcated for trial. Kinney represented himself during the proceedings. He called only himself and Overton as witnesses. After the court granted Overton's motion, Kinney filed his notice of appeal.

II

DISCUSSION

A. *INTRODUCTION*

"The purpose of Code of Civil Procedure section 631.8 is 'to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.' [Citation.] Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence. [Citations.] [¶] On appeal, we view the evidence in the light most favorable to the judgment, and are bound by trial courts' findings that are supported by substantial evidence. [Citation.] But, we are not bound by a trial court's interpretation of the law and independently review the application of the law to undisputed facts. [Citation.]" (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012 [43 Cal.Rptr.3d 513].)

Here, the trial court rendered an oral statement of decision.[1] The court adopted Overton's argument that, pursuant to former section 812 of the Civil Code, Kinney's predecessors in title lost any interest they had in the Lot G Property by failing to record a notice of claim of easement after Orange County abandoned the property in 1970; therefore, Kinney had no interest in the property that would support his causes of action against Overton. Kinney did not object to the oral statement of decision, or draw any omissions or ambiguities therein to the attention of the trial court. Therefore, we infer any findings necessary to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48 [58 Cal.Rptr.3d 225].)

Kinney maintains that the trial court erred in its ruling. He insists that, as an owner of property in Tract No. 849, he has an interest in the Lot G Property and that, furthermore, his predecessors in title were not required to record a notice of claim of easement in order to preserve that interest. He draws to our attention several recorded documents that he says demonstrate his interest in the property.[2] Kinney also argues that he is entitled to pursue the litigation as a judgment creditor of the owner of record of the Lot G Property. We shall address his issues in turn.

## B.  STANDING AS EASEMENT HOLDER

### (1)  Property Interests

#### (a)  Documents of record

As indicated above, the 1927 map of Tract No. 849 designated individual residential lots by number and designated elongated connecting lots by letter. The map provided that the developer, Bank of Italy National Trust and Savings Association (Bank of Italy), did "dedicate all lots designated by Letters for the lot owners of this subdivision, subject to the right hereby reserved by the Bank of Italy . . . to hereafter convey and dedicate said lots

---

[1] Code of Civil Procedure section 632 permits the court to make an oral statement of decision following a one-day trial such as the one that took place here. (*In re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1717 [286 Cal.Rptr. 495].)

[2] Kinney lodged with this court an exhibit book containing exhibits 151 through 192. Overton filed objections in which she claimed that the vast majority of the exhibits contained in the exhibit book were not offered into evidence. Kinney filed no response to Overton's objections. We have ascertained from the reporter's transcript that Overton is correct. In preparing this opinion, we have excluded from review the items in the exhibit book that were not admitted into evidence at trial. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Estate of Locknane* (1962) 208 Cal.App.2d 505, 509 [25 Cal.Rptr. 292].)

(as shown by Letters) to the Public use for Highway Purposes." The map further provided that Orange County had approved the map but had not at that time "accept[ed], on behalf of the Public the lots designated by Letters, for Highway purposes." The subsequent history of the lettered lots is reflected in later recorded documents.

By grant deed recorded in July 1935, Bank of America National Trust and Savings Association (Bank of America), the successor to Bank of Italy, granted to Three Arch Investment Company more than 20 lettered lots in Tract No. 849, including Lot G. It also granted to Three Arch Investment Company "the right reserved by Bank of Italy . . . (now Bank of America . . .) to convey and dedicate lots designated by Letters to the public use for Highway purposes as endorsed on the map of said Tract No. 849."

In September 1935, a deed of right-of-way pertaining to certain streets within the subdivision was recorded. The deed was executed by Three Arch Investment Company as the owner of the streets. The purpose of the deed was to enable Orange County to open and improve certain public highways across Lot P and a portion of Lot G north of the portion at issue in this appeal. Pursuant to the deed, Three Arch Investment Company conveyed and dedicated the property described therein to Orange County for highway purposes.

Another similar deed of right-of-way, pertaining to Lots F, L and M of the subdivision, was recorded in 1936. The deed contained language dedicating and conveying portions of those three lots to Orange County for highway purposes.

In 1938, another deed of right-of-way was recorded. Pursuant to that deed, Three Arch Investment Company, as the owner, granted and dedicated another portion of Lot G of Tract No. 849, again north of the portion of Lot G at issue in this appeal, to Orange County for highway purposes.

The record does not contain a copy of any deed of right-of-way or other document conveying or dedicating the Lot G Property to the county. This notwithstanding, the record does contain a copy of a resolution of the Board of Supervisors of Orange County, California, recorded in July 1970. The resolution recited that the Board of Supervisors of Orange County had found the Lot G Property was unnecessary for public use. The resolution declared the Lot G Property "vacated, discontinued, and abandoned." The resolution

excepted from the abandonment certain easements with respect to sanitary sewers, storm drains, and other items.[3]

### (b) Significance of documents

According to Kinney, the map of Tract No. 849 shows that, as a property owner in the subdivision, he had a private easement over the lettered lots shown on the map of Tract No. 849. He also says the deeds of right-of-way show that fee title to the lettered lots was retained initially by the subdivider, Bank of Italy, and subsequently held by its successor in interest, Bank of America. Kinney further asserts that Bank of America later transferred fee title to Three Arch Investment Company, a company whose corporate powers were subsequently suspended.

At trial, Kinney argued that the three deeds of right-of-way showed that the fee owner of the lettered lots had dedicated certain portions of the streets within the subdivision to the county, but had not so dedicated the Lot G Property. In his opening brief on appeal, he repeatedly asserts, albeit without citation to the record, that the county never accepted the Lot G Property as a public street. In his reply brief on appeal, Kinney explains that the map of Tract No. 849 contained an offer of public use that was not accepted. He insists that the act of the county in purportedly abandoning its interest in the Lot G Property was a void act, because the county never had any interest in the property to abandon.

Kinney is in error. Substantial evidence supports the trial court's implied finding that the county did indeed have an interest to abandon. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d at pp. 1133–1134; *Fladeboe v. American Isuzu Motors, Inc., supra,* 150 Cal.App.4th at p. 48.) The resolution of abandonment itself constitutes evidence of this. Therefore, we cannot conclude that the trial court erred in applying former section 812 of the Civil Code, pertaining to abandonment of public property. (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes, supra,* 139 Cal.App.4th at p. 1012 [substantial evidence standard on review of findings; independent review of legal error].)

---

[3] More particularly, the resolution reserved and excepted from the property being abandoned "an easement or easements and right to maintain, operate, replace, remove and renew all now existing sanitary sewers and storm drains and appurtenant structures in, upon and over the said highway and all portions thereof, and pursuant to any existing franchise or renewal thereof to maintain, operate, replace, remove, renew and enlarge all now existing lines of pipe, conduits, cables, wires, poles, and other convenient structures, equipment and fixtures for the operation of gas pipe lines, telegraphic and telephone lines, railroad lines, and for the transportation or distribution of electric energy, petroleum and its products, ammonia, water, and for incidental purposes."

### (2) *Resolution of Abandonment*

#### (a) *Application of Civil Code former section 812*

Former section 812 of the Civil Code, in effect at the time of the 1970 resolution of abandonment, provided as follows: "The vacation or abandonment, pursuant to law, of streets and highways shall extinguish all private easements therein claimed by reason of the purchase of any lot by reference to a map or plat upon which such streets or highways are shown, other than a private easement necessary for the purpose of ingress and egress to any such lot from or to a public street or highway, except as to any person claiming such easement who, within two years from the effective date of such vacation or abandonment . . . shall have recorded in the office of the recorder of the county in which such vacated or abandoned streets or highways are located a verified notice of his claim to such easement over all or any part of any such street or highway which is particularly described in such notice. . . ."[4] (Stats. 1949, ch. 996, § 1, p. 1827; all subsequent references to section 812 are to this version of the statute.)

Kinney represented to the court that neither he nor any of his predecessors ever recorded a notice of claim of easement over the Lot G Property after the county recorded its resolution of abandonment in 1970. Overton says this means that any easement over the Lot G Property that Kinney otherwise may have had by reference to the map of Tract No. 849 was extinguished, under former section 812. Kinney disagrees, for a number of reasons.

First, he attacks the very premise of former section 812. He argues that as the holder of a private easement, he simply could not be divested of that easement by the county's actions. He cites *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150 [101 Cal.Rptr. 880, 496 P.2d 1248] and *Ratchford v. County of Sonoma* (1972) 22 Cal.App.3d 1056 [99 Cal.Rptr. 887]. The court in *Harman* stated that "a private easement of ingress and egress burdens all public streets in favor of the abutting parcels [citations], and that this easement continues even though the city by vacation

---

[4] Former section 812 of the Civil Code was repealed in 1980 (Stats. 1980, ch. 1050, § 1, p. 3356) and replaced with current Streets and Highways Code section 8353 (Stats. 1980, ch. 1050, § 29, p. 3361), which is substantially similar. Streets and Highways Code section 8353 provides in pertinent part as follows: "(a) Except as provided in subdivision (b), the vacation of a street or highways extinguishes all private easements therein claimed by reason of the purchase of a lot by reference to a map or plat upon which the street or highway is shown, other than a private easement of ingress and egress to the lot from or to the street or highway. [¶] (b) A private easement claimed by reason of the purchase of a lot by reference to a map or plat upon which the street or highway is shown is not extinguished pursuant to subdivision (a) if, within two years after the date the vacation is complete, the claimant records a verified notice that particularly describes the private easement that is claimed in the office of the recorder of the county in which the vacated street or highway is located. . . ."

terminates the public right of access to the street. [Citations.]" (*Harman v. City and County of San Francisco, supra*, 7 Cal.3d at p. 167; see also *Ratchford v. County of Sonoma, supra*, 22 Cal.App.3d at p. 1069 [owner of abutting property has private easement].) However, Kinney's property does not abut the Lot G Property and neither the court in *Harman v. City and County of San Francisco, supra*, 7 Cal.3d 150 nor the court in *Ratchford v. County of Sonoma, supra*, 22 Cal.App.3d 1056 addressed the legal effect of former section 812. The quoted language, therefore, is inapposite.

▪ While Kinney cannot claim to hold a private easement by virtue of owning property abutting the Lot G Property, he can claim that owners in his subdivision, at least initially, held private easements over the Lot G Property by virtue of the recorded map. As the court in *Ratchford v. County of Sonoma, supra*, 22 Cal.App.3d 1056 stated: " 'It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie in relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a private way, and that this private easement is entirely independent of the fact of dedication to public use, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law. [Citations.]' [Citation.]" (*Id.* at p. 1069, fn. 6.) While this rule shows that the property owners in Kinney's subdivision initially held certain private easement rights, it does not mean that they could not have been divested of any of those rights. Kinney cites no case holding that the application of former section 812 to terminate a private easement depicted on a subdivision map constitutes a violation of due process of law.

We observe that *Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374 [246 Cal.Rptr. 469], which Kinney also cites, contains some language that, if not carefully analyzed, could be construed to support Kinney's contention that the resolution of abandonment could not affect his rights. In *Tract Development*, property owners on either side of a strip of property depicted as a street on a subdivision map recorded in 1924 disputed easement rights in that strip. (*Id.* at pp. 1378–1381.) The board of supervisors had abandoned the strip of property, known as Diplomat Avenue, in 1936. A question arose as to whether a 1956 deed in the chain of title operated to except the easement over the strip in question by virtue of referring to Diplomat Avenue as abandoned. The court held that the reference on the deed did not evidence an unambiguous intent on behalf of the transferors to except the private easement from the conveyance to the transferees. (*Id.* at p. 1383.) In so doing, the court also remarked: "[T]he initial reference to the subdivision map created a *private* easement entirely independent of the fact of dedication to public use. The abandonment by the board of supervisors could not have the effect of extinguishing this private easement (see *Anderson v.*

*Citizens Sav. etc. Co.* (1921) 185 Cal. 386, 393–396 [197 P. 113]) . . . ." (*Tract Development Services, Inc. v. Kepler, supra,* 199 Cal.App.3d at p. 1383.) We observe that the issue of the application of former section 812 was not raised, so the case is not support for the proposition that an abandonment under that statutory provision cannot extinguish a private easement. We also observe that the abandonment in question took place in 1936 and the case relied upon by the *Tract Development* court was decided in 1921, both events occurring before the enactment of former section 812 in 1949.

In sum, we reject Kinney's argument that former section 812 could not be applied to affect private easement rights as shown on the map of Tract No. 849. The trial court made no error of law in applying that statute. (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes, supra,* 139 Cal.App.4th at p. 1012 [independent review of questions of law].) We turn to Kinney's other arguments.

Kinney also contends that, even assuming former section 812 applied, the statute would not serve to extinguish his claimed easement interest. He emphasizes the portion of the statute to the effect that the abandonment serves to extinguish private easements "other than a private easement necessary for the purpose of ingress and egress to any such lot from or to a public street or highway . . . ." (Former § 812.) He claims that he retains his easement under this exception. However, he has not explained how it is that an easement across the Lot G Property is necessary for the purpose of ingress and egress to or from his lot, which abuts Lot Q. Access to his lot is from Lot Q, Virginia Way, not the Lot G Property, 11th Avenue. He has admitted that from Virginia Way he can exit the subdivision by using several other streets, including Sunset Avenue, 9th Street and 10th Street. He has not shown that the statutory exception applies. To the contrary, substantial evidence supports the trial court's implied finding that the exception does not apply. (*Fladeboe v. American Isuzu Motors, Inc., supra,* 150 Cal.App.4th at p. 48 [substantial evidence review of implied findings].)

█ Kinney argues that the statutory words "other than a private easement necessary for the purpose of ingress and egress . . ." (former § 812) indicate that easements for street purposes continue after abandonment and that the easements that are extinguished upon abandonment must be those for other purposes, such as utility easements. In support of his position, he cites *Kachadoorian v. Calwa County Water Dist.* (1979) 96 Cal.App.3d 741 [158 Cal.Rptr. 223], having to do with the effect of abandonment upon a water pipeline running through the abandoned easement area. However, that case is inapposite, inasmuch as it has nothing to do with Civil Code former section 812. The public utility in *Kachadoorian* claimed to have an easement for pipeline purposes based on Public Utilities Code section 10101. *Kachadoorian, supra,* 96 Cal.App.3d at

p. 746.) It did not claim a private easement for pipeline purposes by virtue of the purchase of a lot by reference to a recorded map, so as to make former section 812 come into play. That is the key to former section 812. The easements that are extinguished on abandonment are those "claimed by reason of the purchase of any lot by reference to a map or plat upon which such streets or highways are shown," subject to certain exceptions. (Former § 812.) ■ According to the plain language of the statute, the easements at issue are those claimed by lot owners. (*Warmington Old Town Associates v. Tustin Unified School Dist.* (2002) 101 Cal.App.4th 840, 851 [124 Cal.Rptr.2d 744] [we give statutory language its usual, ordinary meaning].) Kinney's argument that the statute cannot possibly mean to terminate private easements for street purposes, but must mean to terminate private easements for public utilities or other purposes, is not persuasive.

Next, Kinney says that, in 1970, Streets and Highways Code sections 954 through 960.4 governed the manner by which a county could abandon a purported public street.[5] However, he does not argue that the county failed to comply with any of the provisions of Streets and Highways Code sections 954 through 960.4 in connection with the resolution of abandonment of the Lot G Property. What he claims is that those statutes controlled over any general provisions of former section 812. However, Kinney does not quote any of those Streets and Highways Code provisions or explain why they would conflict with Civil Code former section 812 or make its provisions ineffective. *Ratchford v. County of Sonoma, supra,* 22 Cal.App.3d 1056 indicates that the Streets and Highways Code provisions in question governed the method of abandonment, not the effect thereof. Kinney has not demonstrated that former section 812 was inapplicable in the context at hand.

Kinney also argues that current Streets and Highways Code section 8353 is inapplicable, because the county never had any interest in the Lot G Property to abandon. Although he does not quite articulate the argument, presumably

---

[5] Kinney again cites *Ratchford v. County of Sonoma, supra,* 22 Cal.App.3d 1056, wherein the court stated: " 'The methods by which county boards of supervisors may abandon public highways are set forth in sections 954 through 960.4 of the Streets and Highways Code. Public hearings, after proper notification, are required in most situations. If a road has remained impassable for five years it may be abandoned simply upon the board's "own motion" (Sts. & Hy. Code, § 954), or, if it "has been superseded by relocation," the board may summarily vacate and abandon by resolution (Sts. & Hy. Code, §§ 960.1, 960.2). When the road has not actually been superseded or become impassable, the Streets and Highway Code authorizes only two methods by which a board of supervisors may abandon it, one by "resolution of intention," and the other, by petition of ten freeholders. Both of these methods require the fixing of a day for hearing, notice to all freeholders in the road district, publication of notice in a newspaper, hearing of evidence by any party interested, and a finding that the road, or portion thereof, "is unnecessary for present or prospective public use." (Sts. & Hy. Code, §§ 956.8–960.)' [Citations.]" (*Ratchford v. County of Sonoma, supra,* 22 Cal.App.3d at p. 1070.)

Kinney also would contend that former section 812 was inapplicable for the same reason. As stated previously, substantial evidence supports the trial court's implied finding that the county did have an interest to abandon, and the trial court did not err in applying former section 812.

(b) *Propriety of abandonment*

■ In addition, Kinney insists that the county could not vacate a public street just for the benefit of one individual, such as Overton. He is right that "[a] street may not be vacated for exclusive private use. [Citations.]" (*Constantine v. City of Sunnyvale* (1949) 91 Cal.App.2d 278, 282 [204 P.2d 922].) "But, on the other hand, it cannot be questioned that in a proper case a city, through its duly constituted authorities, may close and vacate a street, or a part thereof, in the interest of the safety, convenience and good of the general public. Nor is this power affected by the fact that, as one of the incidents to its exercise, the beneficial use or title to the land abandoned may, and usually does, revert to private parties." (*People v. City of San Rafael* (1928) 95 Cal.App. 733, 738–739 [273 P. 138].)

In *Ratchford v. County of Sonoma, supra,* 22 Cal.App.3d 1056, a private individual requested that the county abandon a portion of a street that had been offered for dedication to the public. Her home encroached into the portion of the street in question. (*Id.* at pp. 1059–1060.) Both the engineering advisory committee of the planning commission and the county planning commission itself recommended against abandonment of the property in question because it could cause problems with respect to the adequacy of future roadways. (*Id.* at pp. 1061–1062.) Nonetheless, the board of supervisors abandoned the portion of the street requested by the private individual. (*Id.* at p. 1062.) The appellate court held that the board of supervisors had exceeded its jurisdiction in so doing, inasmuch as the record did not reveal any public benefit in the abandonment and, to the contrary, the record contained evidence indicating that the portion of the street in question might be necessary for prospective public use. (*Id.* at p. 1077.)

In the case before us, however, the record reveals no evidence to show that the Orange County Board of Supervisors exceeded its jurisdiction in adopting the resolution in question. Kinney cites no portion of the record containing evidence of the reasons why the board of supervisors adopted the resolution of abandonment, whether, for example, the property was too steep to pave over for use as a public street or overgrown vegetation on the property constituted a fire hazard and the property needed costly maintenance. The only information we have is that contained on the face of the resolution itself, wherein it is recited that a "request was duly made by Alice E. Jorgensen,

et al., for the abandonment of a portion of Sunset Avenue (formerly Lot 'G'), Tract 849" and that the planning commission, the road commissioner and the county surveyor all recommended the proposed abandonment. Kinney cites no portion of the record identifying Alice E. Jorgensen or the other requestors, or their respective interests in the matter. He likewise cites no portion of the record containing evidence of the impact of the abandonment on subdivision property owners other than himself. However, we accept the notion that the abandonment would appear to have the effect of benefiting Overton, to the extent that she has fenced in the Lot G Property. This notwithstanding, that one piece of information alone is insufficient to show that the Orange County Board of Supervisors exceeded its jurisdiction in abandoning the Lot G Property.

### (3)  *Conclusion*

■  Kinney concedes that if, contrary to his personal belief, he has no property interest in the Lot G Property, then he has no standing, based on his purported status as an easement holder, to maintain any of his causes of action against Overton. (See *Kunza v. Gaskell* (1979) 91 Cal.App.3d 201, 207 [154 Cal.Rptr. 101] [quiet title plaintiff must prevail on strength of own title].) As we have explained, substantial evidence supports the trial court's finding that Kinney has no interest in the Lot G Property that would support any of his causes of action. (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes, supra*, 139 Cal.App.4th at p. 1012.) Therefore, the trial court did not err in granting Overton's motion.

■  That is the extent of our holding. We do not pronounce the state of the title with respect to the Lot G Property and do not address what interest, if any, Overton may have in the property. The determination of those issues is unnecessary to the resolution of this appeal. Consequently, we do not address Kinney's additional arguments directed towards those issues. "[D]eclaratory relief may be refused . . . where it 'appears that the determination is not necessary or proper at the time and under all the circumstances.' [Citation.]" (*Western Gulf Oil Co. v. Oilwell Service Co.* (1963) 219 Cal.App.2d 235, 239 [33 Cal.Rptr. 20].)

## C.  *STANDING AS JUDGMENT CREDITOR*

In addition to arguing that he has standing to bring suit against Overton because he has a property interest in the Lot G Property, Kinney also argues that he has standing because he holds a monetary default judgment against Three Arch Investment Company. Kinney explains that if Three Arch Investment Company still owns the Lot G Property, then as a judgment creditor he can use the Lot G Property to satisfy part of the judgment. In other

words, he should be able to maintain a quiet title action against Overton in order to determine ownership of the Lot G Property, and thereafter execute upon it, if Three Arch Investment Company is determined to be the current owner.

Kinney fails to cite any portion of the record showing that he is a judgment creditor of Three Arch Investment Company. For that matter, he does not cite any portion of the record showing that he ever put his rights as judgment creditor, as opposed to easement holder, into issue. "[T]he failure to provide citation to the record is a violation of California Rules of Court, rule 15(a).[6] A violation of the rules of court may result in the striking of the offending document, the waiver of the arguments made therein, the imposition of fines and/or the dismissal of the appeal. [Citations.] In addition, it is counsel's duty to point out portions of the record that support the position taken on appeal. The appellate court is not required to search the record on its own seeking error. Again, any point raised that lacks citation may, in this court's discretion, be deemed waived. [Citation.]" (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 [115 Cal.Rptr.2d 705]; see also *Doers v. Golden Gate Bridge etc. Dist., supra*, 23 Cal.3d at p. 184, fn. 1 [appellate court does not consider matters outside the record].) Kinney's argument based on his purported judgment creditor status is waived.

## D.   *REQUEST FOR JUDICIAL NOTICE*

Finally, in his opening brief, Kinney requests that we take judicial notice of this court's opinion in the first appeal (*Kinney v. State of California, supra*, G032629)), pertaining to litigation with respect to Lot Q. He explains his view that opinion in the first appeal is the law of the case with respect to the ownership of Lot Q and thus compels the trial court in the matter before us to find that Three Arch Investment Company is the owner of the Lot G Property.

Kinney's request for judicial notice is moot,[7] inasmuch as, by order of June 22, 2007, we have already taken judicial notice of the court's files in the first appeal. However, the opinion in that case addressed whether the State of California could be compelled to take title to Lot Q by way of escheat, not whether Kinney had an easement over the Lot G Property. That opinion is not controlling with respect to the issues before us in this third appeal.

---

[6] See now California Rules of Court, rule 8.204(a).

[7] As an aside, we observe that Kinney's request does not comply with California Rules of Court, former rule 22(a) as in effect at the time he filed his opening brief. (See now California Rules of Court, rule 8.252.) That rule required that he file a separate motion, together with a proposed order and a copy of the matter to be judicially noticed. This he did not do. This being the case, we ordinarily would deny Kinney's request, were it not already moot. (*Del Real v. City of Riverside, supra*, 95 Cal.App.4th at p. 768 [effect of failure to comply with rules].)

## III

## DISPOSITION

The judgment is affirmed. Overton shall recover her costs on appeal.

Sills, P. J., and Fybel, J., concurred.

A petition for a rehearing was denied August 14, 2007, and appellant's petition for review by the Supreme Court was denied October 10, 2007, S155728.