Filed 1/27/16  Ubarieke v. Wal-Mart Stores CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PATERSON UBARIEKE, Plaintiff and Appellant, v. WAL-MART STORES, INC. et al., Defendants and Respondents. | D063555 (Super. Ct. No. 37-2010-00096254-CU-OE-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.


Paterson Ubarieke, in pro. per., for Plaintiff and Appellant.

Petit Kohn Ingrassia & Lutz, Jennifer N. Lutz and Jenna H. Leyton-Jones for Defendants and Respondents.

This employment discrimination case was tried without a jury, and, at the close of plaintiff and appellant Paterson Ubarieke's case, the trial court granted defendants and respondents Wal-Mart Stores, Inc. et al.'s (Walmart) motion for judgment under Code of Civil Procedure section 631.8.  In granting the motion, the trial court stated that the case

turned largely on matters of credibility and that Ubarieke, who was acting in propria persona, had not produced credible evidence in support of his claims. On appeal, we reject Ubarieke's contentions that: defense counsel engaged in fraud; there was any irregularity in the proceedings, error in law, accident or surprise that warrant vacation of the judgment; or the judgment is unsupported by or otherwise against the law. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Ubarieke was employed by Walmart from October 2005 until November 2010, when he resigned from his position as a retail associate at Walmart's Poway store.

In November 2006, Ubarieke was transferred from one department of the store to another after a number of female associates reported Ubarieke behaved inappropriately around them and an actual altercation between Ubarieke and a female associate occurred. The female associate stated Ubarieke acted disrespectfully towards her.

In June 2008, a Walmart assistant manager, Michael Macumber, gave Ubarieke a "coaching" session, the initial level of discipline Walmart uses with its employees. At Walmart, verbal coaching is followed by written coaching, "decision-making day," and termination.

The June 2008 coaching session addressed an incident in which Ubarieke ignored a directive from Macumber and argued with Macumber and other management personnel in the presence of customers. In March 2009, Ubarieke received another coaching for insubordination when he ignored directives from his supervisors.

On June 12, 2009, Ubarieke received a third coaching because he both ignored a directive and threatened a supervisor with legal action. Because the third coaching was

2

a "Decision Day" coaching, consistent with Walmart policy, Ubarieke was provided one day off of work with pay to determine whether he would change his behavior and write a plan of action explaining how he intended to improve his behavior. Ubarieke, however, refused to write a plan of action. Instead, on June 19, 2009, Ubarieke, acting in propria persona, filed his first employment discrimination action (First Lawsuit) against Walmart and a number of Walmart supervisors, including Macumber.

In the First Lawsuit, Ubarieke alleged inter alia that he had been discriminated against and harassed on the basis of his race, color, national origin and gender, and that he had been retaliated against for complaining about allegedly illegal conduct. Ubarieke further alleged Walmart had breached a contract it allegedly had with him.[1]

On June 25, 2009, Walmart's management personnel met with Ubarieke to discuss his refusal to write a plan of action in connection with his Decision Day coaching. During this meeting, Ubarieke continued to exhibit defiant conduct and was ultimately permitted to return to his department notwithstanding his refusal to write a plan of action.

On or about July 4, 2009, Walmart received a complaint from a customer after Ubarieke refused to assist her. When managers spoke with Ubarieke about this incident, he denied a customer had ever approached him.

On or about September 8, 2009, Ubarieke received a performance evaluation, which noted that he needed to be "willing to help out when asked." In May 2010,

---

[1]     On October 22, 2010, the trial court granted defendants' motion for summary judgment in the First Lawsuit, and thereafter entered judgment against Ubarieke. We affirmed that judgment. (*Ubarieke v. Walmart Stores* (Feb. 29, 2012, D058556) [nonpub. opn.].).)

3

Ubarieke commenced a medical leave of absence. On July 16, 2010, while the First Lawsuit was pending, Ubarieke filed the instant lawsuit in which he again alleged claims of employment discrimination. Ubarieke named Walmart and a number of its employees as defendants. As we indicated, Ubarieke resigned in November 2010.

Prior to trial, the trial court granted in part defendants' motion for summary judgment and summary adjudication. As we noted at the outset, trial of Ubarieke's remaining claims was by the court, and, at the close of Ubarieke's case, Walmart and the remaining individual defendant moved for judgment under Code of Civil Procedure section 631.8. In granting the motion, the court stated: "In the court's view, this case comes down largely to a credibility determination. The court has carefully assessed the credibility of the witnesses and considered their attitude and demeanor while testifying. As a general matter, there was little or no corroborating evidence concerning the allegedly racially discriminatory statements or motivations for the actions of Wal-Mart's personnel." With respect to Ubarieke's principal claim that his coaching sessions and discipline were racially motivated, the trial court stated: "The court is also persuaded by the fact that two of the managers who were involved in both asking Plaintiff to perform work and providing him coachings in connection with his refusal to do so were African American. Both Venson Pugh and Cheneque Moots testified that Plaintiff's race and national origin played no role in the coachings he was provided. [¶] Moreover, Moses Nwosu, a Nigerian associate like Plaintiff, testified that he never saw evidence of discrimination against Nigerians at Wal-Mart. [¶] Plaintiff also failed to present any credible evidence establishing that similarly situated 'white' associates received better pay than he, or that he was denied a promotion to management on account

4

of any protected characteristic."

After the trial court granted Walmart's motion for judgment, Ubarieke moved for a new trial, which the trial court denied.[2] Thereafter, Ubarieke moved for relief from the judgment, which motion was also denied.

DISCUSSION

I

In related arguments, Ubarieke contends Walmart's counsel unfairly and improperly interfered with his ability to compel testimony from Walmart employees and introduced into evidence a misleading videotape of deposition testimony. He also contends the trial court abused its discretion in failing to compel the attendance of a former Walmart employee and in permitting one of its employees, who was also a witness, to stay in the courtroom during the trial. Ubarieke's motion for new trial was based on what he believed was counsel's impropriety and the trial court's supposed errors. We find no impropriety on counsel's part or any error or abuse of discretion by the trial court and hence no error in the order denying Ubarieke's motion for a new trial.

A. Procedural Background

1. *Witnesses*

On the first day of trial, the trial court considered Walmart's motion to exclude testimony from witnesses not disclosed during discovery. The trial court granted Walmart's motion in part and denied it in part. The trial court determined that Ubarieke could call current Walmart employees as witnesses and that Walmart would produce

_____

2      We grant Ubarieke's August 31, 2015 motion to augment the record with exhibits attached to Walmart's opposition to Ubarieke's motion for a new trial.

5

them upon Ubarieke's request. The trial court however excluded witnesses who were no longer employed by Walmart and had not been disclosed during discovery.

During the course of the trial, Walmart in fact produced, at Ubarieke's request, 13 employees. Notwithstanding the trial court's order that Walmart produce its employees as witnesses, and Walmart's compliance with the order, Ubarieke nonetheless had a number of Walmart employees served with subpoenas. Significantly, the subpoenas directed the employees to appear on days the trial court had advised the parties that its courtroom would be dark. Ubarieke contends that some of his subpoenas were not served because the process server was erroneously advised that some of the individuals were no longer Walmart employees.

When Walmart's counsel learned the company's employees had been subpoenaed to appear on days the trial court's courtroom would be dark, she advised the employees they need not appear and that she would contact them if they needed to appear. She also wrote to Ubarieke and objected to service of the subpoenas. When trial resumed, Walmart's counsel brought the subpoena issue to the attention of the trial court and stated that, in light of the trial court's previous orders, Walmart did not believe the subpoenas were valid. The trial court then inquired of Ubarieke as to what witnesses he planned to call, and he identified one of the subpoenaed employees, Moses Nwosu. Walmart's counsel then agreed to produce Nwosu. At that point, Ubarieke made no objection to counsel's representation to the court or asserted the need for production of any other witnesses.

2. *Videotape*

During Walmart's cross-examination of Ubarieke, Walmart's counsel played for

6

the trial court excerpts of Ubarieke's deposition in which Ubarieke answered two questions about his emotional distress. Ubarieke did not ask that any other portions of the deposition be played for the trial court.

### 3. *Peppard and Gladue*

Ubarieke served Walmart's counsel with a notice requesting that one of Walmart's former employees, Kimberley Peppard, attend trial. However, prior to trial, the claims against Peppard had been dismissed on Walmart's motion for summary judgment. At the time of trial, Peppard was no longer working for Walmart and Walmart's counsel understood she was living in Nevada. Accordingly, Walmart did not produce Peppard for trial and the trial court did not compel it do so.

Walmart did designate one of the dismissed defendants, Arthur Gladue, as its representative under Evidence Code section 777, subdivision (c), and Gladue was permitted to stay in the courtroom during trial.

### B. Analysis

The record discloses no impropriety on the part of Walmart's counsel. Her statements to the subpoenaed Walmart employees were accurate and practical; no useful purpose would have been served had they appeared on days in which the trial court's courtroom was dark. In any event, in light of Walmart's ability and willingness to produce its employees for trial, Ubarieke suffered no prejudice. Parenthetically, we note the trial court did not abuse its discretion in excluding witnesses who had not been disclosed during discovery and were not, at the time of trial, Walmart employees.

We also find no impropriety in counsel's use of the deposition tape; if Ubarieke believed the excerpts were misleading, he could have asked that more of the deposition

7

be played for the trial court.

We find no abuse of discretion in the trial court's unwillingness to call Peppard as a witness. She was no longer a party to the action and apparently was beyond the subpoena power of the court. Moreover, Walmart had the express right to designate Gladue as its representative and have him attend the trial. (Evid. Code, § 777, subd. (c).)

In sum, the trial court did not error in denying Ubarieke's motion for a new trial.[3]

II

Ubarieke also contends the trial court erred in dismissing his claims. As we have indicated, the trial court rejected Ubarieke's claims largely on the basis of its determination of the credibility of the parties' witnesses. Plainly, the trial court found that Ubarieke was not credible and that Walmart's witnesses were credible. On a motion for judgment under Code of Civil Procedure section 631.8, such determinations of credibility are the province of the trial court and, unless they are wholly unreasonable, binding on appeal. (See *Kinney v. Overton* (2007) 153 Cal.App.4th 482, 487.) Where, as here, the plaintiff has the burden of presenting credible evidence in support of his claims and has failed to do so, the trial court did not err in dismissing those claims.[4]

---

[3]     Ubarieke's motion for relief from the judgment was based on a reiteration of his contention that Walmart interfered with his ability to subpoena its employees. For the reasons the trial did not err in denying Ubarieke's motion for a new trial, it did not err in denying the motion for relief from judgment.

[4]     Briefly, Ubarieke's discrimination claim fails on appeal not only because he failed to present evidence that Walmart took an adverse employment action against him before he went on a medical leave and thereafter resigned, but also because he failed to show that Walmart acted with any discriminatory motive while he was working for the company. Ubarieke's harassment claim fails because although he testified that one of his supervisors called him a racially offensive term, that another supervisor told other

8

DISPOSITION

The judgment is affirmed.  Walmart to recover its costs of appeal.


                                                                    BENKE, Acting P. J.

WE CONCUR:


McINTYRE, J.


IRION, J.

---

employees to "keep an eye on Ubarieke," that supervisors stated they were looking for a way to fire him, and that his movements were monitored, he presented no corroborating evidence and the trial court did not find him credible.  Ubarieke's retaliation claim fails because the coaching he received after he filed the First Lawsuit and later requests for assistance made by supervisors were not adverse employment actions in that they did not give rise to any decrease in his pay or demotion; moreover, there was no credible evidence that during the June 25, 2009 coaching session Ubarieke was subjected to any inappropriate behavior.  Ubarieke's claim that Walmart did not take steps to prevent discrimination and harassment fails because the company not only had an anti-discrimination and anti-harassment policy, but also because Ubarieke failed to show that he was subject to discrimination or harassment.  Ubarieke's breach of contract claim fails because, even if there were a contract under which the company promised not to discriminate against or harass its employees, there is no credible evidence Ubarieke suffered such discrimination or harassment.  For the same reason, Ubarieke's constructive discharge claim also fails.  Because all of Ubarieke's substantive claims failed, there was no basis upon which to award any exemplary damages.

9