Filed 10/1/20  Servin v. Rios CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JILLEANNE SERVIN, | B297231 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STRO01928) |
| v. | |
| SAUL RIOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Holly A. Thomas, Judge.  Affirmed.

Tritt & Tritt, and James F. Tritt for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

* * * * * *

1

A trial court issued a three-year restraining order under the Domestic Violence Prevention Act (the Act) (Fam. Code, § 6200 et seq.).[1]  The enjoined party appeals, arguing that his conduct did not constitute "abuse" within the meaning of the Act. We disagree, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Jilleanne Servin (plaintiff) and Saul Rios (Rios) worked together and started dating in 2017, and moved in together (along with plaintiff's two minor children by another man) in December 2017.  During the time they lived together, Rios was "very controlling" of plaintiff.  He would restrict who she could talk with and who she could go out with; he also sometimes took her phone away.

Plaintiff moved out in November 2018, and she told him their relationship was over.  Rios told her she was "not allowed to leave him."  Over the next several months, Rios would show up uninvited to the house where plaintiff had moved and would "constantly tap on the window," "knock on the door," or "talk through the mailbox" to urge plaintiff to "come out and talk [with] him, or have lunch with him."  Plaintiff occasionally acceded to his demands, but each time told him that she "no longer wanted to be with him or see him [romantically] anymore." She told him this "firmly" in February 2019.

On March 20, 2019, Rios saw plaintiff walking along the sidewalk, pulled his truck in front of her to block her path, and "demanded" that she get in.  She obeyed.  When plaintiff told him that she had to go to the bank, Rios drove her to the bank and

_____

[1]     All further statutory references are to the Family Code unless otherwise indicated.

stayed by her side "the entire time and demanded that [she] have breakfast with him." As he drove them to breakfast, he told her that he would "never stop trying" to get back together with her, that he would not "leave [her] alone," and that "sooner or later people [she] kn[ew] would start to get hurt." Plaintiff agreed to accompany Rios to his house after he promised to return her passport, clothing and other personal belongings she had left there; when they arrived, however, Rios coerced her into the bedroom and then coerced her into having sex with him.

The very next day, Rios showed up at plaintiff's residence claiming he had a lunch date; plaintiff's sister, who lived there, told Rios she was not home. Rios walked away and waited down the street for plaintiff to return. When plaintiff arrived with her children in an Uber, Rios approached her and accused her of having a tryst with the Uber driver. Plaintiff ran into the house while Rios photographed the Uber driver and the license plate of his vehicle, and Rios thereafter repeatedly knocked on the door even after plaintiff asked him to leave.

## II. Procedural Background

On March 25, 2019, plaintiff filed a request for a restraining order under the Act against Rios. The same day, the trial court issued a temporary restraining order (TRO) requiring Rios to stay away from plaintiff and not to harass or contact her, and also set the matter for a hearing.

At the April 15, 2019 hearing, plaintiff was self-represented and Rios appeared through counsel. The court reviewed Rios's response to plaintiff's request, swore in both parties, and proceeded to question them. At the conclusion of the hearing, the court found "good cause to issue a restraining order in this case" because (1) "the parties have a [dating] relationship that [is]

3

protected under the [Act]," and (2) Rios "has committed acts that can be enjoined under the [Act]." More specifically, the court "credit[ed] [plaintiff's] testimony regarding the incident on March 20[]" and regarding Rios's "history of controlling behavior." The court also "question[ed]" Rios's competing account of what happened on March 20 because it contained "inconsistenc[ies]."

The court accordingly issued a three-year restraining order that (1) orders Rios to stay 100 yards away from plaintiff and her children, (2) prohibits him from "harass[ing], attack[ing], . . . threaten[ing], assault[ing] (sexually or otherwise), hit[ting], . . . stalk[ing], molest[ing], destroy[ing] personal property, disturb[ing] the peace, keep[ing] under surveillance, impersonat[ing] . . . or block[ing the] movements" of plaintiff or her children, and (3) prohibits him from contacting plaintiff or her children "directly or indirectly, by any means."

Rios filed a timely appeal.

## DISCUSSION

The Act authorizes a trial court "to restrain any person for the purpose" of "prevent[ing] acts of domestic violence" and "provid[ing] for a separation of the persons involved" if there is "reasonable proof of a past act or acts of abuse." (§§ 6300, subd. (a), 6220.) For these purposes and as is pertinent here, "abuse" includes "stalking," "threatening," "harassing," and "disturbing the peace of the other party." (§§ 6203, subd. (a)(4) [defining "abuse" under the Act as "engag[ing] in any behavior that . . . could be enjoined" under section 6320], 6320, subd. (a) [listing, among other things, the conduct indicated].) Rios argues that the trial court erred in issuing a restraining order in this case because the conduct plaintiff proved did not qualify as "abuse" within the meaning of the Act. We review the trial court's

4

issuance of a restraining order for an abuse of discretion, reviewing any subsidiary legal questions de novo and the sufficiency of the evidence for substantial evidence. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; *Shoen v. Zacarias* (2019) 33 Cal.App.5th 1112, 1118.)

The trial court did not abuse its discretion in issuing the restraining order in this case. A person "disturb[s] the peace" of another if he "destroy[s] th[at person's] mental or emotional calm." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602.) Here, the evidence credited by the trial court established that Rios had previously engaged in "controlling behavior" by restricting when and with whom plaintiff could go out; that he had come to her residence after she moved away uninvited and insisted that she come out with him; and that on March 20 he demanded that plaintiff accompany him to breakfast and to his home where he made veiled threats and coerced her into sex. As numerous cases have held or suggested, this constitutes substantial evidence that Rios had disturbed plaintiff's peace. (See, e.g., *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 784 (*Nevarez*) [person "disturbs peace" when he contacts victim with repeated text messages and emails, comes to her work, and prevents her from getting into her car]; *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290-1291 [person "disturbs peace" when he engages in "pattern of unwanted phone calls or letters"]; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1142-1146 [person "disturbs peace" when he ignores request not to contact victim and shows up uninvited to "beseech[] her to renew their intimate relationship"]; *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 818-822 (*Rodriguez*) [person "disturbs peace" when he "exhibit[s]

5

controlling behavior" by calling multiple times, "accusing [victim] of cheating, and taking actions to isolate [her]" from others].)  As a result, we need not examine whether Rios's conduct also qualifies as "harass[ment]," "stalk[ing]" or "threaten[ing]" within the meaning of the Act.

Rios marshals four sets of arguments in response.

First, he asserts that his "controlling behavior" is insufficient to constitute abuse because section 6320 does not ever use the word "control," because *Rodriguez, supra*, 243 Cal.App.4th 816 holds merely that control is "relevant" to abuse (but does not constitute "abuse" by itself), and because defining his conduct as "abuse" would punish him for merely being "persistent in . . . his courtship" of plaintiff.  For support, Rios cites *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249 (*S.M.*).  We reject Rios's assertion.  Although section 6320 does not expressly list "controlling behavior" as a form of "abuse," the cases cited above uniformly hold that "controlling behavior" that manifests itself in harassment (through unwelcomed encounters and isolating behavior) constitutes "disturbing the peace" and thus constitutes "abuse."  That includes *Rodriguez*, which held not only that controlling behavior is "relevant," but also that the enjoined party's "acts of isolation, control, and threats were sufficient to demonstrate the destruction of [the victim's] mental and emotional calm" (and hence to "disturb [her] peace").  (*Rodriguez*, at pp. 821-822.)  We categorically reject Rios's attempt to recharacterize (and thereby minimize) his manipulative, forceful and coercive behavior—which, according to plaintiff, included coercive sex—as "persist[ence] in . . . his courtship."  And *S.M.* is factually inapt.  There, the sole "abuse" was the boyfriend's verbal "badgering" of his girlfriend not to leave the state with

6

their child during a single, late-night conversation. (*S.M.*, at pp. 1265-1266.)

Second, Rios argues that the trial court's findings were insufficient because the court did not specifically state that Rios's controlling behavior "disturb[ed]" plaintiff's "peace." But Rios did not object to the sufficiency of the court's findings. Where, as here, a party fails to "object to [an] oral statement of decision, or draw any omissions . . . therein to the attention of the trial court," we must "infer any findings necessary to support the" order. (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 488.) Because the court issued the order in this case, it necessarily found that Rios's controlling behavior rose to the level of disturbing plaintiff's peace and we can—and will—imply that finding.

Third, Rios contends that there was "much conflicting evidence" at the hearing. This is true—plaintiff laid out what Rios had done, and Rios denied almost of all of it. But the trial court found plaintiff to be the more credible party, and we have no basis to second guess that credibility finding. (*Nevarez, supra*, 227 Cal.App.4th at p. 786.)

Lastly, Rios suggests that the trial court acted improperly by asking plaintiff leading questions during the hearing. Although the court "recited briefly the allegations" in plaintiff's petition and "ask[ed her] some questions about them" using leading questions, this was entirely proper. Where, as here and as is common in proceedings under the Act, there are self-represented litigants, the trial court is "necessarily expected to play a far more active role in developing the facts." (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 861.) The court's decision in this case to facilitate the introduction of evidence by asking plaintiff directed questions is well within the leeway granted to

7

trial courts in these cases.  (See generally Evid. Code, § 765, subd. (a) ["The court shall exercise reasonable control over the mode of interrogation of a witness so as to make interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be . . ."].)

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

8