[No. B178000. Second Dist., Div. Six. May 23, 2006.]

THE PEOPLE ex rel. DEPARTMENT OF MOTOR VEHICLES, Plaintiff and Appellant, v.
CARS 4 CAUSES, Defendant and Respondent.

## COUNSEL

Bill Lockyer, Attorney General, James M. Humes, Chief Assistant Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Laura Lee Gold, Gary S. Balekjian and Patricia A. Nevonen, Deputy Attorneys General, for Plaintiff and Appellant.

Goldenring & Prosser, James E. Prosser; Lascher & Lascher and Wendy C. Lascher for Defendant and Respondent.

OPINION

**PERREN, J.**—Appellants People of the State of California and Department of Motor Vehicles (DMV) filed a civil complaint against respondent Cars 4 Causes seeking monetary damages and injunctive relief. The complaint alleges that respondent sold motor vehicles in violation of Vehicle Code smog certification requirements, and engaged in unfair competition and false advertising.

After appellants presented their evidence at trial, the trial court granted a motion by respondent for judgment. (Code Civ. Proc., § 631.8.) Appellants contend that the evidence establishes the unlawful sale by respondent of unsmogged motor vehicles through sham transactions with dealers and exporters, and false and misleading advertising. We reverse.

## FACTS AND PROCEDURAL HISTORY

### *Respondent's Business*

Respondent Cars 4 Causes is a tax-exempt, nonprofit corporation that solicits the donations of motor vehicles that it sells from a lot in Van Nuys, California. Respondent retains one-half of the sale proceeds and, after deducting towing expenses, distributes the remaining proceeds to charities. Between July 2002 and June 2003 respondent sold approximately 700 to 800 vehicles per month.

Respondent is permitted to sell vehicles to licensed dealers without smog certification, but must obtain smog certificates for vehicles "subject to retail sale." (See Veh. Code, § 286, subd. (*o*).)[1] Respondent designates vehicles without smog certificates with stickers stating that they are for sale to "dealers, dismantlers and exporters only." Independent automobile dealers regularly conduct business on respondent's lot. A dealer will sometimes purchase an unsmogged vehicle from respondent and immediately resell the vehicle to a retail customer of respondent.

### *Evidence Regarding Sales to Dealers*

After he had selected a vehicle on respondent's lot, respondent told Richard Howard that the vehicle could be sold only to a licensed dealer. A dealer approached Howard and offered to buy the vehicle and resell it to Howard. Howard accepted and obtained a money order for the price payable to respondent. Howard gave the money order to the dealer along with his

---

[1] All further statutory references are to the Vehicle Code unless otherwise stated.

driver's license and a fee for the dealer. The dealer gave the money order to respondent, bought the vehicle and immediately resold it to Howard. The dealer told Howard to get the vehicle smogged, and that title would be transferred when Howard brought a smog certificate to the dealer. The dealer gave Howard the keys to the vehicle and Howard drove off.

Respondent negotiated a price for the purchase of two vehicles by Larry Marske, but informed Marske that the vehicles had to be purchased through a dealer. Marske left the lot, obtained cashier's checks for the price, returned, and spoke to the same respondent employee. The employee pointed out a dealer on respondent's lot. Marske approached the dealer who agreed to buy the vehicles and resell them to Marske. The dealer brought Marske's cashier's checks to respondent's office and purchased the vehicles. The dealer gave Marske possession of the vehicles and told him that the sale would be completed when Marske obtained smog certificates.

Respondent negotiated a price for a vehicle selected by Wilson Perry, but informed Perry the vehicle could only be sold through a dealer. Respondent's employee directed Perry to a dealer on the lot who purchased the vehicle with Perry's money and resold it to Perry. The dealer told Perry that title would be transferred to him after Perry had the vehicle smogged.

DMV investigators posing as consumers conducted an "undercover" purchase of a car from respondent's lot. The investigators selected a vehicle identified as available for purchase only by dealers and asked to be referred to a dealer. Respondent's employee pointed out a dealer on the lot, and told the investigators to obtain a cashier's check for the price payable to respondent. The dealer purchased the vehicle from respondent and immediately resold it to the investigators.

Respondent referred Tom Erickson to a purported dealer named Jacobs. Jacobs bought a vehicle and resold it to Erickson. When the vehicle failed a smog test, Erickson made a complaint to the DMV against Jacobs, but she could not be located.

### Evidence Regarding Export Sales

In 2002, respondent sold 20 to 30 vehicles without smog certificates to a man named Tomas Felix who stated that the vehicles were being purchased for export. In 2003, respondent sold at least 100 to 150 unsmogged vehicles to other buyers who stated that the vehicles were being purchased for export. To complete these sales, the buyers presented some form of identification showing a connection to a foreign country or a state other than California, and signed a "certification of exportation" form prepared by respondent. The

form required the buyers to declare that the vehicle would be exported or, if not, the buyer would obtain smog certification.

### Advertising of "Free Towing"

Respondent advertised that it provides "free towing" to vehicle donors. The advertisements did not disclose that a fee was paid to a towing company and deducted from the portion of sales proceeds distributed to charities. When a prospective donor contacts respondent, however, he or she is informed that a towing charge will be incurred and will be deducted from the proceeds given to charities.

### Code of Civil Procedure Section 631.8 Motion

After appellants presented their evidence at trial, respondent moved for judgment under Code of Civil Procedure section 631.8.[2] The trial court granted the motion except as to the Erickson sale and a sale to Donald Dzukola. The court ruled in favor of respondent after respondent presented evidence regarding the Erickson and Dzukola matters. The trial court's statement of decision covered both the matters resolved by the Code of Civil Procedure section 631.8 motion and the Erickson and Dzukola matters.[3]

In its statement of decision, the trial court ruled that appellants "failed, both legally and factually, to sustain their burden of proof regarding the claims set forth in the Complaint." The court stated that, because vehicle donation organizations are exempt from dealer licensing requirements, respondent may sell vehicles to licensed dealers and exporters without smog certificates. Concluding that there was no basis to "legally" differentiate between legitimate and sham, the court ruled that the challenged sales were legitimate sales to dealers and exporters.

---

[2] In relevant part, Code of Civil Procedure section 631.8 provides: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision . . . , or may decline to render any judgment until the close of all the evidence. . . . [¶] (b) If it appears that the evidence presented supports the granting of the motion as to some but not all the issues involved in the action, the court shall grant the motion as to those issues and the action shall proceed as to the issues remaining. Despite the granting of such a motion, no final judgment shall be entered prior to the termination of the action, but the final judgment in such action shall, in addition to any matters determined in the trial, award judgment as determined by the motion herein provided for. [¶] (c) If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

[3] Appellants do not contest the ruling on the Dzukola matter.

The court found no evidence of "any arrangement between Defendant and any dealer for referrals, or for compensation for referrals, or that sales to dealers were conditional in any way." As to export sales, the trial court concluded that there was no evidence that "any vehicle sold as an export was not in fact exported from California," and no evidence that any buyer was not a "legitimate exporter." Relying on these findings and conclusions, the trial court also ruled that the challenged sales did not constitute unfair competition. (Bus. & Prof. Code, § 17200.)

In addition, the court determined that respondent's advertising of "free towing" was not false or misleading. (Bus. & Prof. Code, § 17500.) The court found that the advertising was not likely to mislead or deceive the public regarding the amount of money from a sale that respondent would contribute to charity.

## DISCUSSION

### Standard of Review

The purpose of Code of Civil Procedure section 631.8 is "to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact." (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424 [57 Cal.Rptr.2d 46].) Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. (*People v. Mobil Oil Corp.* (1983) 143 Cal.App.3d 261, 267 [192 Cal.Rptr. 155].) In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence. (*Ford v. Miller Meat Co.* (1994) 28 Cal.App.4th 1196, 1200 [33 Cal.Rptr.2d 899]; *Roth v. Parker* (1997) 57 Cal.App.4th 542, 550 [67 Cal.Rptr.2d 250].)

On appeal, we view the evidence in the light most favorable to the judgment, and are bound by trial courts' findings that are supported by substantial evidence. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [86 Cal.Rptr.2d 473].) But we are not bound by a trial court's interpretation of the law and independently review the application of the law to undisputed facts. (*Ibid.*) Also, because the trial court issued a statement of decision, we are bound by express findings supported by the evidence but will not imply other findings in support of the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].)

*Sales to Dealers*

■ Appellants contend that the trial court erred in granting respondent's Code of Civil Procedure section 631.8 motion because undisputed evidence establishes that respondent sold and delivered motor vehicles to the public without compliance with smog certification requirements. Appellants dispute the court's conclusion that there was no basis to distinguish between "legitimate" and "sham" transactions, and argue that the evidence shows respondent used dealers to disguise its sales to retail customers. We agree.

■ In relevant part, section 24007, subdivision (b)(1) provides that "no person shall sell, or offer or deliver for sale, to the ultimate purchaser, or to any subsequent purchaser a new or used motor vehicle . . . which is not in compliance with . . . the rules and regulations of the State Air Resources Board, unless the vehicle is sold to a dealer . . . ." A licensed automobile dealer, therefore, is permitted to sell motor vehicles to another dealer who is not the "ultimate purchaser" without compliance with smog certification requirements.

■ A vehicle donation organization is exempt from the requirement that it must be a licensed dealer in order to sell motor vehicles. (§ 286, subd. (*o*).)[4] Such an organization may sell vehicles to a licensed dealer without compliance with smog certification requirements because such transactions are treated as dealer-to-dealer sales. A vehicle donation organization, however, remains obligated to obtain smog certification prior to making a "retail sale" to a member of the general public. (§§ 286, subd. (*o*)(1)(C), 24007, subd. (b)(1).)

Contrary to the trial court's conclusion, the law and undisputed evidence establish a legal and factual basis for distinguishing between legitimate sales to dealers and sham transactions. The statutory scheme permits dealer-to-dealer sales without smog compliance because, by transferring responsibility for obtaining a smog certificate to the purchasing dealer, the effectiveness of emissions regulations is not endangered. (See *Fruehauf Corp. v Lakeside Chevrolet Co.* (1981) 117 Cal.App.3d 783, 786 [173 Cal.Rptr. 55]; § 24007, subds. (a), (b)(1).)

---

[4] In relevant part, section 286, subdivision (*o*) provides that a dealer does not include: "(1) Any public or private nonprofit charitable, religious, or educational institution or organization that sells vehicles if all of the following conditions are met: [¶] (A) The institution or organization qualifies for state tax-exempt status . . . . [¶] (B) The vehicles sold were donated to the nonprofit charitable, religious, or educational institution or organization. [¶] (C) The vehicles subject to retail sale . . . are in compliance with emission control requirements as evidenced by the issuance of a [smog certificate] . . . . Under no circumstances may any institution or organization transfer the responsibility of obtaining a smog inspection certificate to the buyer of the vehicle. . . ."

Conversely, when the vehicles are immediately resold to buyers without leaving the original "dealer's" premises, the transaction cannot be construed as a sale to a dealer, followed by an independent and separate sale by the purchasing dealer to a member of the public. There is a single transaction with the purchasing dealer serving to disguise direct sales by respondent to respondent's own retail customers. (See *Springmeyer v. Ford Motor Co.* (1998) 60 Cal.App.4th 1541, 1572 [71 Cal.Rptr.2d 190]; *Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d 907, 920–922 [80 Cal.Rptr. 89, 458 P.2d 33].)

Moreover, when the vehicles remain unsmogged at the time they reach the ultimate retail purchaser, the only reasonable conclusion is that the transaction is designed to transfer the obligation for smog compliance from respondent to the ultimate purchaser. Such a transfer of responsibility is prohibited by section 286, subdivision (*o*).

In this case, the evidence compels the conclusion that the Howard, Marske, Perry, Erickson, and DMV undercover purchases were direct retail sales to the general public. (§ 520.) Undisputed evidence shows that, when these prospective retail buyers expressed an interest in buying a vehicle from respondent that did not have a smog certificate, respondent directed them to dealers who were working on its premises. With respondent's knowledge and approval, the dealers offered to help complete the sale. Their help, however, consisted solely of taking a check or money order payable to respondent from the buyer, delivering the money to respondent's cashier, taking the vehicle keys from respondent, and handing the keys to the buyer. The buyer could and did drive off with the vehicle, and an admonition that he had to get the vehicle smogged before receiving the pink slip.

Respondent argues that evidence of unlawful conduct by dealers does not establish unlawful conduct by respondent and notes that appellants did not allege or attempt to prove liability on an aiding and abetting theory. But the evidence shows that respondent was the direct participant in the sale of unsmogged vehicles to retail buyers. If anything, the dealers aided and abetted respondent, not vice versa.

We are mindful of the standard of review for a motion under Code of Civil Procedure section 631.8. Evidence from which an unlawful purpose on the part of respondent might be suspected or inferred is not sufficient to reverse. As a reviewing court, we will not second-guess the weight given to conflicting evidence by the trial court. But a reviewing court cannot ignore undisputed evidence and independently reviews legal conclusions. Here, undisputed evidence establishes that the challenged transactions constituted the sale and delivery by respondent of unsmogged vehicles to the general public as a matter of law.

*Sales for Export*

Appellants contend that the trial court also erred in concluding that respondent did not violate smog certification requirements by selling un-smogged vehicles ostensibly for purposes of "export." Respondent claims the evidence fails to establish an intent to circumvent smog requirements, and the trial court agreed by concluding that the buyers for export were "legitimate exporter[s]," and that there was no evidence that "any such vehicle was not, in fact, exported." We agree with appellants. The undisputed evidence compels the conclusion that the sales respondent characterized as "export" sales constituted retail sales, and that respondent was obligated to obtain smog certificates prior to the sales. (§§ 286, subd. (*o*), 520.)

As the trial court found, appellants proved that respondent labeled a sale as an "export" sale whenever the buyer possessed some form of identification showing a connection to a foreign country or another state, and stated that the vehicle was purchased for export to a foreign country or to another state. These sales must be deemed "retail sales" because they cannot be construed as anything else. On the basis of the current record, respondent sold the vehicles to anyone who offered to pay the price and signed an ineffectual "certification of exportation." The buyers were then permitted to take possession of unsmogged vehicles while on respondent's premises.

The identification required by respondent did not have to show the buyer was in the export business or resided in the foreign country or other state. The "certification of exportation" was prepared by respondent and did not require exportation of the vehicle. Instead, it provided that, if the buyer chose not to export the vehicle, the buyer would "be responsible for any repairs necessary for the vehicle to pass smog."

Respondent's certificate also did not require compliance with any federal export requirement. There is no evidence that respondent sought assurances that the vehicles were irrevocably committed to export or were delivered to a carrier or other entity for transport out of California. (Cal. Code Regs., tit. 18, § 1620, subd. (a)(3)(C)(2).)

In addition, the certificate did not comply with Vehicle Code requirements. A vehicle owner is required to file a declaration with the DMV stating that the vehicle is being exported out of the United States by means other than its own power or towing. (§§ 6160, 6161.) And, if the owner appears with the certificate of title in proper order, the DMV will record that the vehicle is intended for permanent or temporary exportation from the United States. (§ 6162.)

Respondent's certifications for exportation included some of the same information required by section 6161, but sometimes omitted names and

addresses, did not reveal the purpose of exportation, did not disclose the destination of the vehicles, and did not declare that the vehicles would be taken out of California.

### Unfair Competition and False Advertising

■ Appellants contend that the trial court erred in ruling that respondent's dealer and export sales were not prohibited business practices under the California unfair competition law (UCL). The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) An "unlawful" practice requires violation of another statute, and a business practice may be "unfair" even if not otherwise proscribed by statute as long as the practice is not expressly authorized by law. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 181–182 [83 Cal.Rptr.2d 548, 973 P.2d 527].) Respondent's dealer and export sales were unlawful business practices as a matter of law because they constituted violations of the Vehicle Code smog certification requirements.

Appellants also contend that respondent's promise to provide "free towing" constitutes false or misleading advertising. (Bus. & Prof. Code, § 17500.) They argue that the claim is false because it does not disclose that the cost of towing is deducted from the sales proceeds contributed to charity. We agree.

■ Under Business and Professions Code section 17500, it is unlawful for any person or entity "with intent directly or indirectly to dispose of real or personal property or to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property or those services . . . which is untrue or misleading . . . ." Advertising may be misleading, but not false, if it has a " 'likelihood or tendency to deceive or confuse the public.' " (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951 [119 Cal.Rptr.2d 296, 45 P.3d 243].) The "likely to be deceived" standard requires a probability that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 508 [129 Cal.Rptr.2d 486].)

Respondent obtains the donation of vehicles by representing that the proceeds of sale, or part of the proceeds, will be contributed to charities. To induce donations, respondent advertises that it provides "free towing" of a vehicle from the donor's residence. Respondent does not charge the donor for the towing, but pays a towing company, and deducts the charge from the portion of the sale proceeds otherwise designated for charity.

Based on the evidence, the advertising of "free towing" is deceptive. The towing is free to the donor, but not to the charities. We acknowledge that, in some contexts, a reasonable consumer is aware that someone must bear the cost for what is purportedly "free." In this context, however, the donors have a charitable purpose and respondent represents that it will effectuate that purpose. Advertising free towing when, in fact, the cost will be deducted from the charitable contribution is necessarily deceptive.

Respondent argues that, if a donor specifically asks respondent to explain the free towing representation, respondent will inform the donor that towing charges are incurred and deducted from the proceeds of sale. This explanation does not remove the deception. It was given only on specific request and after the prospective donor had made a commitment to the donation process. Also, the explanation is ambiguous. It is unclear whether the towing charge is deducted from the proceeds of the sale with charities getting 50 percent of the remainder, or whether the proceeds are divided in half and the towing charge is deducted in its entirety from the charities' share.

### No Error in Excluding Evidence

■ Appellants contend that the trial court abused its discretion by refusing to consider for its truth information on DMV computer printouts regarding the licensing status of dealers, and the fact that some vehicles sold to dealers were not taken to the dealers' established place of business prior to delivery to consumers. Under Evidence Code section 1280, evidence of a writing is admissible "to prove the act, condition, or event" when the writing is made by a public employee within the scope of his or her duty at or near the time of the act, condition or event, and the sources of the information indicate its trustworthiness. Here, the record does not establish that the trial court abused its discretion in finding that these requirements were not satisfied. In addition, the record fails to show that appellants were prejudiced by the trial court's ruling.

### Remand for New Trial

■ Appellants request that we reverse and issue a new judgment in their favor. We decline this request and will remand to the trial court for a new trial. Code of Civil Procedure section 43 authorizes the Court of Appeal to "affirm, reverse, or modify any judgment or order appealed from, [to] direct [that] the proper judgment or order . . . be entered, or [to] direct [that] a new trial or further proceedings . . . be had." And Code of Civil Procedure section 631.8 provides that a defendant may bring a motion "without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment." "In the present case, the

motion was granted, but since the judgment is being reversed on appeal, the situation is the same as if the motion had not been granted." (*Pinsker v. Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160, 166–167 [81 Cal.Rptr. 623, 460 P.2d 495].)

The judgment is reversed and the matter is remanded for a new trial consistent with the views expressed in this opinion. Costs on appeal are awarded to appellants.

Gilbert, P. J., and Yegan, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 16, 2006, S144774.