*Supp. 3 Opinion
McKAY, P. ,j.—
BACKGROUND
Plaintiff owned and rented the premises located at 4447 S. Huntington Drive, Los Angeles, California, 90032 (the premises). Plaintiff rented the premises to defendant beginning in August 2003. Under the terms of the lease, the agreed-upon rent was $950 per month payable the first day of each month.[1] The tenancy was also governed by a Section 8 Housing Assistance Payments (HAP) contract[2] and the premises were located within the jurisdiction of the Los Angeles Rent Stabilization Ordinance[3] (LARSO). Under the Section 8 contract, defendant was required to pay rent in the amount of $392 per month directly to plaintiff. The balance of $558 was paid directly to the landlord as a housing assistance payment[4] by the Housing Authority of the City of Los Angeles (HACLA), which is the local public housing agency that administered the Section 8 program.[5]
On October 13, 2010, plaintiff served defendant with a 90-day notice terminating the lease for “good cause” namely “business and economic reasons.” Plaintiff relied upon title 24 of the Code of Federal Regulations part 982.310(a)(3), (d)(l)(iv) (2012) as the statutory authorities for his action. According to the statement of decision, the 90-day notice (which is not included in the record on appeal) provided that plaintiff’s specific reasons for serving the notice were as follows: “difficulty dealing with Section 8 requirements, paperwork, inspections and attempt to obtain a rent increase. Failure by Section 8 agents in returning phone calls. Constant waste of time to obtain any information. I have made a business decision that I do not want to continue my relationship with the government as a party in my rental contracts. This decision is also being made to reduce expenses. . . .”
Thereafter, on February 3, 2011, plaintiff served defendant with a three-day notice to pay rent of $950 or quit. Defendant attempted to pay her share of the rent—which had since decreased to $115—but plaintiff refhsed to accept *Supp. 4 it. In addition, plaintiff returned the HACLA subsidy of $835 which had been automatically deposited into his bank account.
Subsequently, on February 9, 2011, plaintiff filed the instant unlawful detainer action against defendant seeking, inter alia, possession of the premises on the ground that she failed to comply with his three-day notice. On February 14, 2011, defendant filed her answer to the complaint.
On March 22 and 23, 2011, the cause was called for court trial.[6] Plaintiff’s wife—Belinda Crisales (Ms. Crisales)—testified that she managed the rental of defendant’s unit. Ms. Crisales further testified to repeated unsuccessful attempts to secure approval from HACLA for the yearly 3 percent increase in rent which was authorized under LARSO. According to Ms. Crisales, in the eight years defendant was a tenant of the premises, plaintiff was unable to secure approval for a single rent increase. Specifically, Ms. Crisales said that she first contacted HACLA in May 2008 and inquired regarding the process for requesting a rent increase. She again inquired on October 28, 2009, and was instructed to apply online. She did so, and received a confirmation letter with followup instructions dated March 24, 2010. When Ms. Crisales called again in June 2010 to “find out about” the rent increase, her Section 8 advisor—Mr. Flores—informed her that there was no record of her request. Mr. Flores instructed her to resubmit the request, but Ms. Crisales testified that she did not do so.
Defendant testified at trial that on February 3, 2011, she attempted to pay her portion of the rent—$115—but plaintiff returned it to her on February 5, 2011. Defendant said she had resided at the premises since 2003, and had no prior incidents or problems dealing with the Section 8 program or with HACLA. Defendant said she “has been able to reach her worker at HACLA to address any issues related to inspections or certification each year.”
On March 25, 2011, the trial court issued its statement of decision. Therein, the court stated, inter alia, as follows: “Barrientos makes clear that *Supp. 5 the termination of the HAP contract can be done only for reasons sanctioned under LARSO. Thus, the termination attempted by plaintiff was unlawful and not effective. For that reason, defendant’s rent obligation remained that stated in the HAP contract at the time plaintiff served the 3-day notice, and the notice overstated the rent due.” (Original underscoring.) Thereafter, the court issued its judgment in favor of defendant for possession. This timely appeal followed.
ISSUES ON APPEAL
Plaintiff seeks reversal of the judgment on the ground that he lawfully terminated the Section 8 contract. Specifically, plaintiff argues that by terminating the tenancy for “economic reasons” defendant became obligated to pay the full rental amount, and when she failed to do so, plaintiff properly filed the instant action.
DISCUSSION

Standard of Review

On appeal, this court is bound by the trial court’s factual findings that are supported by substantial evidence. (DiPirro v. Bondo Corp. (2007) 153 Cal.App.4th 150, 189 [62 Cal.Rptr.3d 722].) As to the application of the law to undisputed facts, however, we exercise our independent judgment and are not bound by the trial court’s interpretation of the law. (Kinney v. Overton (2007) 153 Cal.App.4th 482, 487 [63 Cal.Rptr.3d 136]; People ex rel. Dept, of Motor Vehicles v. Cars 4 Causes (2006) 139 Cal.App.4th 1006, 1012 [43 Cal.Rptr.3d 513].)

Plaintiff’s Attempt to Terminate the HAP Contract Was Not Effective

Under the federal provisions that govern a Section 8 tenancy, a landlord may terminate the tenancy for “other good cause” by giving the tenant written notice that specifies the ground for the action. (42 U.S.C. § 1437f(o)(7)(C); see 24 C.F.R. § 982.310(a) (2012).[7]) “Other good cause” is defined to include a “business or economic reason for termination of the *Supp. 6 tenancy (such as sale of the property, renovation of the unit, or desire to lease the unit at a higher rental).” (24 C.F.R. § 982.310 (d)(l)(iv) (2012).[8])
However, the Ninth Circuit case of Barrientos made clear that LARSO is not preempted by the federal regulations. (Barrientos v. 1801-1825 Morton LLC (9th Cir. 2009) 583 F.3d 1197, 1210-1213 (Barrientos).) In that case, the court held that LARSO prohibited eviction of federally subsidized tenants in order to raise their rent. (583 F.3d at pp. 1210-1213.) This was despite the fact that the examples of good cause contained in 24 Code of Federal Regulations part 982.310(d)(l)(iv) (2012) include the landlord’s desire to lease the premises at a higher rental rate. (583 F.3d at p. 1214.) The court found that the regulation did not create an unqualified right to evict Section 8 tenants in order to raise rent; rather, it created a floor or lower limit of protection which could be enhanced by local laws such as LARSO. {Barrientos, at p. 1207.) As such, the court found that LARSO did not present an obstacle to the accomplishment of Section 8’s objectives. Under Barrientos, the landlord cannot terminate his HAP contract with HACLA unless his attempted termination also complies with LARSO requirements for termination of a tenancy.
The court in Barrientos referred to a “guidance document” (Barrientos, supra, 583 F.3d at p. 1214) issued by HUD in June 2009 which was labeled “Notice PIH 2009-18 (HA)” (hereinafter Notice). The subject matter of said Notice was “State and Local Law Applicability to Lease Terminations in the Housing Choice Voucher (HCV) Program.” According to the Notice, its purpose is as follows: “This notice provides clarification on the applicability of State and local laws in the Housing Choice Voucher (HCV) Program regarding termination of tenancies by the owner for other good cause at 24 CFR 982.310.”
The Notice then goes on to state the following: “State and local governments may enact rent control and tenant protection laws and ordinances. In such instances these rental protections operate along with the HCV program regulations. The regulation at 982.310(d)(l)(vi) [¿ic] provides that other good cause ‘may include, but is not limited to, any of the following examples . . .’. The use of ‘may include’ means that ‘other good cause’ may or may not include the examples, as opposed to listed examples constituting good cause in all circumstances. [|] For example, while good cause ‘may include’ a business or economic reason (e.g., there is no State or local law prohibiting termination of tenancy for such cause), in other circumstances it may not include a business or economic reason. If a State or local law prohibits the *Supp. 7 termination o[f] tenancy for a business or economic reason such as a desire to lease the unit at a higher rental, then that specific ground)] for termination of the tenancy does not constitute ‘other good cause’ under 24 CFR 982.310(d) in that particular instance. Therefore, the owner may not terminate the tenancy of the participating voucher family for that reason, [f] In summary, nothing in 24 CFR 982.310(d)(1) pre-empts any applicable State or local laws that restrict or prohibit the termination of tenancy. This applies to all HCV vouchers.” (Notice PIH 2009-18 (HA), original italics, underscoring added.)
The court in Barrientos stated that the Notice was “entitled to deference” on the ground that it was a reasonable and fair interpretation issued by HUD of its own regulation. (Barrientos, supra, 583 F.3d at pp. 1214-1215.) The Barrientos court concluded as follows: “the HUD regulation and LARSO do not actually conflict. LARSO does not impede the federal objective of providing affordable housing to low-income families. LARSO, therefore, is not preempted by 24 C.F.R. § 982.310(d)(l)(iv) (2012) to the extent the HUD regulation permits eviction in order to obtain a higher rental, in the absence of contrary state or local law. [Fn. omitted.]” (Id. at p. 1215.)
Although we are not bound by Ninth Circuit authority, we find the court’s analysis in Barrientos to be persuasive, well reasoned, and precisely on point. (See Adams v. Pacific Bell Directory (2003) 111 Cal.App.4th 93, 97 [3 Cal.Rptr.3d 365] [“although not binding, we give great weight to federal appellate court decisions”]; Travelers Casualty & Surety Co. v. Superior Court (1998) 63 Cal.App.4th 1440, 1454 [75 Cal.Rptr.2d 54] [following “the well-reasoned and on-point decisions of the Ninth Circuit”].) Accordingly, we find it appropriate to apply the same principles to the instant matter. In the absence of preemption, plaintiff’s 90-day notice was not effective unless it also complied with LARSO.

Good Cause Requirements Under LARSO

Under LARSO, the permitted grounds for termination of a tenancy and eviction of a tenant from rent-controlled premises are as follows: (1) failure to pay rent; (2) violation of a covenant of the tenancy after notice and failure to cure other than (a) the duty to surrender possession, (b) exceeding occupancy limits, or (c) change in the terms of the tenancy; (3) the presence of a nuisance; (4) illegal use of the premises; (5) refusal to sign a new rental agreement after a demand to do so; (6) denial of access to the landlord; (7) subtenant in possession not approved by landlord; (8) landlord seeks possession for his or family use, or for use by resident manager; (9) landlord seeks possession for renovation work and the tenant has failed to temporarily relocate or has failed to honor a relocation agreement; (10) landlord seeks to either demolish or remove premises permanently from the rental market; (11) *Supp. 8 landlord seeks possession in order to comply with a governmental order; (12) the premises are owned by HUD and it seeks to vacate the property prior to sale; and (13) the premises are part of a “Residential Hotel” and the landlord seeks to recover possession in order to convert or demolish the premises.[9] (Mun. Code, § 151.09A.1-13.)
The general ground of “business and economic reasons” as stated in plaintiff’s 90-day notice to defendant does not fall within any of the enumerated categories for eviction under LARSO. Accordingly, plaintiffs notice failed to terminate the Section 8 tenancy, plaintiff’s subsequent three-day notice was improper, and plaintiff was not entitled to possession of the premises.
DISPOSITION
The judgment is affirmed. Defendant to recover costs on appeal.
Keosian, J., and Ricciardulli, J., concurred.

 The parties’ lease agreement is included in the record on appeal. Page 2 of said lease provides as follows: “Attached hereto in an ADDENDUM to this lease and by this reference is incorporated herein as if fully set forth.” However, no such addendum is attached or included in the record on appeal.

 See title 42 United States Code section 1437, and title 24 Code of Federal Regulations parts 982.1-982.555 (2012).

 See Los Angeles Municipal Code (LAMC) section 151.00 et seq.

 See title 24 Code of Federal Regulations part 982.4(a)(3) (2012).

 Many of these facts are taken from the trial court’s statement of decision.

 It is apparent from the court’s statement of decision (discussed post) that numerous exhibits were received in evidence during trial. With the exception of the parties’ original lease agreement dated August 14, 2003, none of the exhibits are included in the record on appeal. We further note that although plaintiff filed a “Notice Designating Record on Appeal" wherein he requested that plaintiff exhibits No. 1 (“HAP Contract”), No. 2 (“6/29/10—Section 8 Voucher Program, Notice of Change,” No. 3 (90-day notice), No. 4 (proof of service regarding 90-day notice) and No. 8 (“Section 8 Voucher Program/Receipt of Request for Rent”) be included in the record, they nevertheless are not part of the record. Furthermore, we note that defendant filed a notice pursuant to California Rules of Court, rule 8.843(a)(1) requesting that original exhibits Nos. 1, 2, 3 and 9 (three-day notice) be transmitted to the Appellate Division.
Given that the trial court previously returned the original exhibits to the parties, and that the parties to this appeal have failed to timely and/or properly comply with rules 8.832(b)(3) and 8.843(a)(1) of the California Rules of Court, no such transmission occurred.

 “During the term of the lease, the owner may not terminate the tenancy except on the following grounds: [f] (1) Serious violation (including but not limited to failure to pay rent or other amounts due under the lease) or repeated violation of the terms and conditions of the lease; [][] (2) Violation of federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the premises; or [f] (3) Other good cause.” (24 C.F.R. § 982.310(a) (2012), italics added.)

 “(d)(1) ‘Other good cause’ for termination of tenancy by the owner may include, but is not limited to, any of the following examples: []Q . . . [][] (iv) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, or desire to lease the unit at a higher rental).” (24 C.F.R. § 982.310(d)(l)(iv) (2012), italics added.)

 There are now 14 enumerated grounds for eviction under Municipal Code section 151.09A. At the time plaintiff served his 90-day notice on defendant, however, there were 13 grounds.