Filed 2/22/21; modified and certified for partial publication (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARVIN JONES, | B297425 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC573529) |
| v. | |
| QUALITY COAST, INC., | |
| Defendant and Respondent. | |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.
　　　　Charlton Weeks, Bradley T. Weeks for Plaintiff and Appellant.
　　　　Magarian & Dimercurio, Mark D. Magarian and Krista L. Dimercurio for Defendant and Respondent.

Plaintiff and appellant Marvin Jones (Jones) sued Quality Coast, Inc. (Quality Coast), alleging the company's decision not to hire him was the result of race and gender discrimination and a violation of the Displaced Janitor Opportunity Act (DJOA) (Lab. Code,[1] § 1060 et seq.). A jury returned a defense verdict on the discrimination claims. The DJOA claim was decided by the trial judge, who found Jones was not entitled to protection under that statute because he was a supervisory employee. The primary issue we are asked to decide is whether the trial court properly found Jones was a supervisory employee under the DJOA. We also consider whether the trial court erred in giving the jury a modified instruction on the business judgment rule (a question largely derivative of the DJOA issue presented) and in awarding costs to Quality Coast as the prevailing party on the DJOA claim.

## I. BACKGROUND

In 2003, Jones began working as a janitor at an air traffic control facility in Palmdale, California that is administered by the Federal Aviation Administration (FAA). Jones was employed by CMI Janitorial (CMI), which contracted with the FAA to provide janitorial services at the Palmdale facility.

In 2009, NMS Management, Inc. (NMS) succeeded CMI as the provider of janitorial services for the Palmdale facility and hired Jones and all his co-workers to service the FAA contract. Quality Coast succeeded NMS as the janitorial service provider in 2014, and the company did not hire Jones.

---

[1] Undesignated statutory references that follow are to the Labor Code.

Jones sued Quality Coast for (among other things) race and gender discrimination pursuant to the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and for violation of the DJOA. In his operative pleading, Jones alleged that under the DJOA Quality Coast was obligated to hire him for at least a 60-day period following termination of the FAA's contract with NMS because Jones was "not employed in a bona fide supervisory capacity, was not paid on a salaried basis, did not spend a majority of his time engaged in the oversight and direction of other employees, . . . [and did not] perform the functions of an actual supervisor . . . . His true capacity was analogous to a 'team lead.'" The pertinent provisions of the DJOA do require such a 60-day hire, but only for "employees," which the act defines (in language at the heart of this appeal) as any person working at least 15 hours per week who is not "a managerial, supervisory, or confidential employee, including those employees who would be so defined under the federal Fair Labor Standards Act [(FLSA)]." (§§ 1060, subd. (c), 1061, subd. (b)(1).)

Jones's FEHA cause of action was tried to a jury, and the jury returned a defense verdict for Quality Coast by a vote of 9-3. Following the jury's verdict, Jones advised the trial court he presented at trial all the evidence he would present as to the DJOA cause of action. Quality Coast then moved for judgment on that cause of action. Quality Coast argued the evidence at trial—including the "Supervisor" job classification given Jones on a list of employees NMS provided to Quality Coast when it took over the janitorial services contract—established Jones was a supervisor and, thus, not a protected employee under the DJOA.

3

In opposition, Jones argued the evidence established he was not a supervisory employee under the FLSA definitions, as well as under definitions in other statutes, including FEHA and California's minimum wage law.[2]  In particular, Jones

---

[2]  The FLSA grants the Secretary of Labor authority to promulgate regulations to "define[ ] and delimit [ ]" the scope of exemptions from overtime pay rules.  (29 U.S.C. § 213, subd. (a)(1).)  "To qualify as an exempt executive, administrative or professional employee . . . , an employee must be compensated on a salary basis . . . ."  (29 C.F.R. § 541.600(a).)  For each exemption, the United States Department of Labor has identified objective, multi-element definitions that can be used to determine whether an employee is exempt or nonexempt.  For example, in the context of the executive exemption, where the primary duty is "management" of the enterprise or one of its constituent departments or subdivisions (29 C.F.R. § 541.100), the regulations provide the following non-exhaustive list of work responsibilities that qualify as management-related duties: "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing compliance measures."  (29 C.F.R. § 541.102.)

maintained he could not be considered a supervisory employee under FLSA, and by extension the DJOA, because he was not a salaried employee and because his primary duty at the Palmdale plant was "janitorial labor."

### A. Jones's Status as a Supervisory Employee, as Established by the Evidence Presented at Trial

While working for CMI (the first of the three janitorial service providers), Jones handled administrative tasks in addition to his cleaning duties. For example, when a CMI co-worker wanted to change his or her schedule or go on vacation, or if the FAA requested special janitorial work such as "high dusting," or if additional cleaning supplies were needed in Palmdale, Jones would relay the request to his CMI supervisor located in Long Beach, California, who would then approve or disapprove the request.

When NMS took over from CMI, Jones's role did not change: he continued to perform as the site's "go to" intermediary and facilitator in addition to his cleaning work. Jones was given access to an office and a computer and provided with an FAA email address—something the other NMS janitors were not. Jones was paid on an hourly basis, and eventually, NMS formally designated Jones as its "site supervisor" at Palmdale and increased his hourly pay from $14.50 to $14.75. Jones did not, however, have authority to hire, fire, transfer, suspend, discipline, or promote any of the other janitorial staff.

The other janitors at the Palmdale FAA facility uniformly testified Jones was their supervisor. Linda Bailey, an FAA employee who frequently interacted with Jones, similarly testified he was the only NMS supervisor at the facility and the

5

liaison to the FAA. As site supervisor, Jones had the authority to direct his coworkers to remedy dirty conditions at the facility identified by FAA personnel. Maria Lainez, who worked with Jones during his five years with NMS, testified he acted as the intermediary between the janitors and NMS's management, including by passing change of schedule requests to the NMS home office, which then approved or disapproved the requests. Alba Ortega, another janitor, testified Jones would give her "orders" and she and other janitors would tell Jones when they needed cleaning supplies and he was responsible for ordering them.

After the FAA selected Quality Coast to succeed NMS, NMS gave Quality Coast a list of its eight Palmdale employees. The list classified Jones as the on-site "Supervisor." When Quality Coast interviewed Jones for a janitorial position at the Palmdale facility, Jones identified himself as NMS's site supervisor. Specifically, Jones's notes of the interview, which were admitted as an exhibit at trial, read: "[A Quality Coast representative] introduced himself as Richard the owner of [Quality Coast] and [said] you are the supervisor for NMS right? I said yes."

Before Quality Coast began its work at the FAA facility, company representatives toured the location with a FAA administrator. The administrator said she considered Jones to be an ineffective supervisor in light of the dirty conditions at the facility. Based on the FAA administrator's comments and their own observations of conditions at the facility, Quality Coast's principals decided to bring in one of their own supervisor-employees to oversee the work at the Palmdale facility. Although Quality Coast's principals eliminated Jones early on from

6

consideration as their on-site supervisor, they did consider retaining him as one of their Palmdale janitors and interviewed him for that position. But they ultimately decided not to hire Jones as a janitor because of concerns over how he treated the other employees.

### B. The Trial Court Finds Jones Was a Supervisory Employee

On January 18, 2019, after hearing argument and taking the matter under submission, the trial court granted Quality Coast's motion for judgment on the DJOA cause of action. The court's written ruling found it was undisputed Jones that was a supervisor, relying on a dictionary definition of the term. The court explained Jones referred to himself as a supervisor, his co-workers and FAA administrators at the Palmdale facility described him as a supervisor, NMS categorized him as a supervisor in the transition paperwork it provided to Quality Coast, and Jones "acted as the intermediary between NMS and the other janitorial employees, directing the work of the other janitors and ordering supplies." The trial court believed the issue was "[Quality Coast]'s state of mind at the time it made its decision not to hire [Jones.] From that standpoint everything [Quality Coast] knew at the time indicated that [Jones] was a supervisory employee." In reaching its decision, the trial court did not discuss or reference FLSA standards for determining whether an employee is a supervisor.

## II. DISCUSSION

We shall affirm the judgment because there is ample evidence Jones was a supervisory employee for the purposes of

7

the DJOA and his remaining assignments of error are meritless. Though the trial court's ruling includes an odd turn of phrase about the significance of Quality Coast's "state of mind," the focus of the court's findings was on the evidence bearing on whether Jones exercised supervisory authority over others at his work site at the time Quality Coast took over servicing the FAA facility. There was strong evidence he did, as the trial court found. He was designated a supervisor by the outgoing janitorial company, he described himself as "the supervisor," other janitors and an FAA employee described him as the site supervisor, and he occupied a leadership role among all the janitorial staff— including by giving orders and directions and by serving as the liaison to FAA personnel at the facility. That is supervisory in just about any sense of the word, and certainly for purposes of a statute that applies only to janitorial company employees. Jones's claim of instructional error is predicated on his belief that the trial court's DJOA finding was error; it was not, and the instructional error claim fails for that reason. Finally, Jones's costs argument is meritless because the general costs statute applies to the DJOA (non-FEHA-based) cause of action and Quality Coast was the prevailing party.

> A.   *The Trial Court Correctly Found Jones Is a Supervisory Employee for DJOA Purposes*
> 1.   *Standard of review*

Under Code of Civil Procedure section 631.8, "a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence." (*People*

*ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139
Cal.App.4th 1006, 1012.)

When a trial court issues a judgment pursuant to Code of
Civil Procedure section 631.8, the standards of appellate review
are the same as if the court had rendered a judgment after a
completed bench trial. (*Orange County Water Dist. v. MAG
Aerospace Industries, Inc.* (2017) 12 Cal.App.5th 229, 239.) The
trial court's findings of fact are reviewed under the substantial
evidence standard and its determinations of questions of law,
such as the proper interpretation of a statute, are subject to
independent review. (*Id.* at 240.)

### 2. *The Pertinent DJOA Provisions*

The DJOA requires contractors who are awarded contracts
for janitorial or building maintenance services at a particular site
to retain certain employees working for the terminated contractor
for a 60-day transition employment period, and to offer those
workers continued employment if their performance during the
60-day period is satisfactory.[3] (§ 1061, subds. (b)(1) & (f).) As we

---

[3] The legislative history of the DJOA indicates it was
designed to protect vulnerable janitorial workers from a labor
market in which they can lose their jobs with little or no warning.
(Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill
No. 20 (2001-2002 Reg. Sess.) Sept. 6, 2001, pp. 4-5.) The act was
based on ordinances adopted by the following cities to protect
displaced contract workers: Washington, D.C., San Francisco,
California, and Philadelphia, Pennsylvania. (See, e.g., Sen. Rules
Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 20 (2001-
2002 Reg. Sess.) May 16, 2001, p. 3; Sen. Rules Com., Off. of Sen.
Floor Analyses, Rep. on Sen. Bill No. 20 (2001-2002 Reg. Sess.)

have already stated, the act defines an "employee" as a person who works at least 15 hours per week providing janitorial or building maintenance services but who is not a "managerial, supervisory, or confidential employee, including those employees who would be so defined under the federal Fair Labor Standards Act." (§ 1060, subd. (c).)  Significantly, and to implement these provisions just referenced, the DJOA requires a terminated contractor to provide the name, date of hire, and job classification of each employee employed at the site to the successor contractor within three working days after receiving notice that its contract has been terminated.  (§ 1061, subd. (a).)

Under the DJOA, an employee of the terminated contractor who was not offered employment by the successor contractor may sue the successor for back pay, including the value of any lost employment benefits.  (§ 1062, subd. (a).)  If the employee is the prevailing party, the trial court "shall award the employee reasonable attorney's fees and costs as part of the costs recoverable."  (§ 1062, subd. (c).)  The act is silent about awards of fees and costs to a prevailing defendant.

### 3.  *Analysis*

The text of the DJOA does not indicate the Legislature used the term "supervisory employee" in any technical sense different from its common understanding.  (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529 [in interpreting a statute, words should be given their "usual and ordinary meaning"]; see also *People v. Andrade* (2000) 85 Cal.App.4th 579,

---

Sept. 6, 2001, p. 3.)  Each of these ordinances define "employee" in terms similar to the DJOA.

587 [considering the plain meaning of a statute where there was no indication the Legislature intended the phrase to have a technical or special meaning].) Yes, section 1060 does make reference to employees who would be defined as "managerial, supervisory, or confidential" under the FLSA, but it does so only by using the word "including," which is not a word of limitation. To the contrary, with section 1060, subdivision (c)'s syntax ("'Employee'" does not include a person who is a managerial, supervisory, or confidential employee, including those employees who would be so defined under the [FLSA]") the Legislature necessarily intended those employees considered "supervisory" would extend beyond those employees who would be managerial or exempt under the FLSA.

Jones fits the common understanding of the word "supervisor." That is even how the relevant parties here used the word: Jones himself, the terminated janitorial company NMS, the FAA employee with whom Jones frequently interacted, and the other janitors at the FAA facility all described Jones as the site supervisor. And they did so with good reason: Jones had a leadership role as compared to the other janitors. He was the only one to liaise with the FAA, he was the only one who had his own office, he was the person to whom the janitors would go if they needed more supplies, he would distribute work schedules, and he would give directions and orders to the others. That is supervision not only in the common sense but even as defined in a Government Code statute, cited by Jones, that applies in a different context (state employer-employee relations). (Gov. Code, § 3513, subd. (g) ["'Supervisory employee' means any individual, regardless of the job description or title, having authority, in the interest of the employer, to hire, transfer,

11

suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, *or responsibility to direct them,* or to adjust their grievances, or effectively to recommend this action, if, in connection with the foregoing, the exercise of this authority is not of a merely routine or clerical nature, but requires the use of independent judgment"], italics added.)

### B. *It Was Not Error to Give the Modified Business Judgment Rule Instruction at Trial*

During the jury trial on Jones's discrimination claim, Quality Coast proposed that the jury be instructed with CACI No. 2513, Business Judgment. The pattern instruction provides: "In California, employment is presumed to be 'at will.' That means that an employer may [discharge/[other adverse action]] an employee for no reason, or for a good, bad, mistaken, unwise, or even unfair reason, as long as its action is not for a [discriminatory/retaliatory] reason."

Jones's attorney argued the instruction's reference to "at will" employment was not consistent with the facts of the case because Jones was not an "at will" employee under the DJOA. The trial court agreed to modify the instruction by removing the "at will" language and gave the jury this modified instruction: "An employer may refuse to hire an employee for no reason or for a good, bad, mistaken, unwise or even unfair reason, as long as its action[ ] is not for a discriminatory reason."

The sole argument Jones now makes for why giving this instruction was error is the argument he made in the trial court: the instruction was a misstatement of law because Quality Coast had to hire Jones for at least 60 days under the DJOA and he therefore was not an at-will employee. We have already rejected

12

Jones's DJOA argument and that fatally undermines the key premise of his instructional error claim. We therefore need not analyze the issue further.

### C. The Trial Court's Costs Award Is Not Erroneous

There is no disputing Quality Coast was the prevailing party under the generally applicable costs statute. (Code Civ. Proc., § 1032, subd. (a)(4) ["'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant"].) Under Code of Civil Procedure section 1032, "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (Code Civ. Proc., § 1032, subd. (b).)

FEHA is an example of a scenario where another rule does expressly provide otherwise. Under FEHA, costs may be awarded to a prevailing defendant only if the plaintiff's action was objectively without foundation. (Gov. Code, § 12965, subd. (b) ["In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs . . . except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so"]; *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 (*Williams*).) The FEHA rule applies only to FEHA causes of action, however, and a trial court may still award costs,

13

pursuant to the generally applicable costs statute, to non-FEHA causes of action litigated with FEHA claims. (*Arave v. Merril Lynch, Pierce, Fenner, & Smith, Inc.* (2018) 19 Cal.App.5th 525, 548 ["[T]he holding in *Williams* does not preclude defendants from obtaining ordinary costs on [the plaintiff's] *wage* claim" that was brought in conjunction with FEHA causes of action].) As Jones does not contest the amount of costs awarded, only the fact that costs were awarded at all, we need not discuss the issue further. Costs were appropriately awarded to Quality Coast under Code of Civil Procedure section 1032 for (and only for) prevailing on Jones's DJOA claim—there is no statute that expressly provides otherwise.

## DISPOSITION

The judgment is affirmed.  Quality Coast shall recover its costs on appeal.



BAKER, Acting P. J.


We concur:



MOOR, J.



KIM, J.

Filed 3/23/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARVIN JONES, | B297425 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC573529) |
| v. | |
| QUALITY COAST, INC., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendant and Respondent. | |

It is ordered that the opinion filed February 21, 2021, be modified as follows:

On page 2, the fifth sentence of the first paragraph (beginning "We also consider . . . .") is deleted.

On page 3, in the second sentence, "that under the DJOA" is deleted, "the DJOA obligated" is inserted between "alleged" and "Quality Coast," and "was obligated" is deleted so the sentence as revised begins: "In his operative pleading, Jones alleged the DJOA obligated Quality Coast to hire him for at least a 60-day period . . . ."

 On page 6, in the first sentence of the second full paragraph, "a FAA administrator" is revised to read "an FAA administrator"

On page 8, the following two sentences are deleted: "Jones's claim of instructional error is predicated on his belief

1

that the trial court's DJOA finding was error; it was not, and the instructional error claim fails for that reason. Finally, Jones's costs argument is meritless because the general costs statute applies to the DJOA (non-FEHA-based) cause of action and Quality Coast was the prevailing party."

On page 9, the capitalization in the subheading is revised to read: *2. The pertinent DJOA provisions*

On page 9, in the last sentence of footnote three, "define" is revised to read "defines"

On page 11, the second full sentence is revised to read: To the contrary, section 1060, subdivision (c)'s syntax ("'Employee' does not include a person who is a managerial, supervisory, or confidential employee, including those employees who would be so defined under the [FLSA]") indicates the Legislature necessarily intended those employees considered "supervisory" to extend beyond those employees who would be managerial or exempt under the FLSA.

On page 14, "*Merril*" in the citation is revised to read "*Merrill*" and the comma after "*Fenner*" is deleted.

So modified, and pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, it is ordered that all parts of the opinion other than Parts II.B and II.C are certified for publication. Insofar as the March 11, 2021, request for publication of the opinion submitted by Krista L. DiMercurio, counsel for Quality Coast, Inc., requests publication of the opinion in full, the request is denied.

There is no change in judgment.

BAKER, Acting P. J.          MOOR, J.          KIM, J.

2