Filed 12/2/24  Yue v. Yang CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| DONGXIAO YUE,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>WENBIN YANG,<br><br>       Defendant and Respondent. | A168295<br><br><br>(Contra Costa County<br>Super. Ct. No. MSC1601118) |

Plaintiff Dongxiao Yue appeals from a judgment entered against him pursuant to Code of Civil Procedure section 631.8[1] on his complaint for unfair competition and defamation against defendant Wenbin Yang.  Yue argues the trial court erred by failing to impose terminating sanctions against defendant Yang, excluding certain evidence, and entering judgment against Yue.  He also argues the bench trial violated his due process rights and the equal protection clauses of the California and United States Constitutions.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 13, 2016, Yue filed a complaint against Yang; Trigmax Solutions, LLC (Trigmax); Yeyeclub.com (Yeyeclub); and Muye Liu.  The

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

1

complaint alleged causes of action for unfair competition and defamation. It alleged that Yue established a Chinese language online community Web site called Zhen Zhu Bay (ZZB). Trigmax and Liu allegedly owned and operated a competing Chinese language Web site whose successor is Yeyeclub. Yang, a resident of Toronto, Canada, allegedly used the online identity "iMan" and others on Yeyeclub and ZZB. In September and October 2015, Yang, using various online identities, allegedly posted messages on Yeyeclub stating that Yue violated a court order and used an " 'Internet Virus Technique during the process service.' " Yang also posted a blog article titled " '[Plaintiff's] Trojans Virus and Burglary Felony,' " stating, " 'Since [Plaintiff] was able to use Trojan horse virus to send summons to Y's computer, then he can send anything to X's computer. Only if he need! For example, he can send a hidden monitor, just like underground special agent's secret radio, steal all the data in your computer,' " and Yue's " 'summons Trojan horse' 'stole the information of your computer's operating system.' " (*Sic.*)

On March 27, 2023, the trial court granted a motion to dismiss filed by Liu and Trigmax.[2] Yue filed a separate appeal regarding the dismissal order, which we decided in *Yue v. Trigmax Solutions, LLC, supra*, A167577. On March 27, 2023, Yue proceeded to trial against Yang only. Yue and Yang each proceeded in pro. per. and appeared remotely for a bench trial.

_____

[2] As we noted in our unpublished opinion in *Yue v. Trigmax Solutions, LLC* (Aug. 29, 2024, A167577), the trial court's order granting the motion to dismiss states that the motion was also brought on behalf of Yeyeclub. We noted that the record in appeal No. A167577 was unclear and inconsistent regarding whether Yeyeclub moved for dismissal based on the five-year rule, whether a default judgment was entered as to Yeyeclub, and whether the trial court's reference to Yeyeclub in its dismissal order was a clerical error, and we left it to the parties on remand to determine the status of Yeyeclub. Yeyeclub, Trigmax, and Liu are not parties to this appeal.

There is no court reporter's transcript of the first day of trial. The minute order states that Yue and Yang each gave brief opening statements and then Yue testified. The minute order does not summarize Yue's testimony other than stating: "The court informs Mr. Yue his testimony thus far is hearsay and not evidence. [¶] The court strikes testimony regarding users being local California residents as it lacks foundation and calls for hearsay and speculation." (Capitalization omitted.) The minute order also states that Yang objected to exhibits Yue offered into evidence. The trial court admitted certain exhibits and excluded others. Some exhibits were excluded because they were not translated into English. Yue called Yang and examined him briefly before the court recessed. The minute order does not summarize Yang's testimony.

The second day of the bench trial was transcribed by a court reporter. Yang's testimony continued through an interpreter. When asked if he made posts on Yeyeclub, Yang first stated that he was "not very clear on this because [it was] many years ago" and then denied he posted on Yeyeclub. Upon Yue's request, the trial court took judicial notice of a June 29, 2022, minute order finding that Yang failed to respond to certain of Yue's requests for admission, which were then deemed admitted. The trial court explained that the deemed admissions were that Yang used the identity of iMan on ZZB, Yeyeclub, and XYS[3] and that he also used the identities of VOA and CH3CH2OH on Yeyeclub. The trial court admitted additional exhibits into evidence based on the admissions regarding Yang's various identities. Yue questioned Yang about whether he wrote a message stated on one of the exhibits, and Yang stated he did not remember. Yue then stated he had no further questions for Yang. Yue then offered exhibit 72, which he stated was

---

[3] XYS is not identified in the reporter's transcript.

"a summary of statistics of [ZZB's] blog account, blog view account, and et cetera." Yang did not object to its admission, and the trial court admitted the exhibit but also noted a lack of proper foundation. Yue rested.

The trial court invited Yang to make a motion for judgment under section 631.8. The trial court explained that a motion for judgment is a motion at the close of plaintiff's case for failure to provide sufficient evidence to support the case, and the trial court asked, "Mr. Yang, is that your motion?" to which Yang stated, "Yes, it is." The trial court offered Yue the opportunity to reopen his case to present additional evidence and stated that the court had reviewed the exhibits and found a lack of proof of defamation or damages. Yue did not offer additional evidence. However, he responded that he believed the evidence provided in trial exhibits 37 to 45 and 47 proved defamation and that damages are presumed. He further stated that trial exhibit 72 showed a drop in users on ZZB.

The trial court asked Yue to clarify the theory of defamation on which he based his complaint. Yue stated his position was that the defamation involved a private figure and private concern. The trial court then asked Yue to specifically identify which statements he believed were defamatory, and Yue referred to statements in trial exhibits 37, 39, 42, 43 and 44, including, " 'You have violated court order. The whole family was almost driven to the streets' "; a blog post titled "Trojan Virus and Burglary Felony of Yue"; and another document titled "Legal Illiterate and Shyster Yue The Fruit of Poisonous Tree Delivering Summons With Online Virus." Yue further argued that Yang's statement in exhibit 41 that Yang had " '[n]ot seen anything which indicates that Yue might really conduct such kind of illegal attack except your claim' " was evidence that Yang admitted his statement regarding Yue's use of a Trojan horse was untrue. Yue rested again.

4

The trial court granted the motion for judgment and orally noted some deficiencies in Yue's case, stating: "For almost all of Mr. Yue's testimony, he failed to testify or demonstrate to the court that any of these statements were untrue. Many of the statements pointed to by Mr. Yue are statements of opinion, which are permissible. They're also insults, which are permissible under the First Amendment. [¶] Mr. Yue also failed to show any damages. He didn't testify about damages. He didn't explain the chart. He didn't provide any nexus between the reduction and these postings. He even failed to demonstrate that these postings were public. There was some intimation perhaps they were, but there was no evidence of it. [¶] When he states that Mr. Yang admitted that the Trojan horse virus was untrue, that is not the evidence that I heard yesterday. Mr. Yue's testimony was deficient to establish any of the elements that I'm looking at California Jury Instruction 1704. [¶] I do have the fact that Mr. Yang made these statements. I don't have any proof that he reasonably understood that these were not true or he failed to use reasonable care to determine the truth or falsity of the statements. [¶] There were no actual damages. And with regard to assumed damages, I will note that if there is—Plaintiff has proved the harm to hurt feelings or shame or reputation or mortification, that Mr. Yue provided no testimony about that either. I understand that he brought the case, but no testimony was provided."

## DISCUSSION

### I. *The trial court did not abuse its discretion when it denied Yue's pretrial requests for terminating sanctions.*

Yue argues the trial court erroneously denied his motion for terminating sanctions against Yang based on his discovery violations. On January 4, 2022, Yue filed a motion to compel further discovery responses from Yang. The motion also requested monetary sanctions of $125 but not

5

terminating sanctions. On March 9, 2022, the trial court granted Yue's motion in part and ordered Yang to provide verified responses to certain discovery requests, including requests for admission related to several online identities used by Yang.

On May 27, 2022, Yue filed a motion to deem the first set of requests for admission propounded on Yang admitted because Yang failed to comply with the March 9, 2022, discovery order. Yue's motion also requested terminating sanctions. On June 29, 2022, the trial court granted Yue's motion to deem the requests for admission admitted but denied Yue's request for terminating sanctions.

Yue moved again for terminating sanctions on August 25, 2022, based on Yang's supplemental discovery responses and violation of prior discovery orders. On October 19, 2022, the trial court denied Yue's motion for terminating sanctions. On January 19, 2023, Yue filed a motion to compel Yang to answer deposition questions which he had refused to answer. In the motion, Yue also requested monetary sanctions of $1,771.62, but he did not request terminating sanctions. On March 15, 2023, the trial court granted Yue's motion in part but denied monetary sanctions.

Yue contends the trial court's denial of his pretrial requests for terminating sanctions against Yang should be reversed. We review an order denying a motion for terminating sanctions for abuse of discretion. (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604.) The order is presumed correct, and all presumptions are indulged to support the order on matters as to which the record is silent. It is Yue's burden to affirmatively demonstrate error. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) Discovery sanctions should be "appropriate to the dereliction, and should not exceed that which is required to protect the

6

interests of the party entitled to but denied discovery." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793.) "[T]he terminating sanction is a drastic penalty and should be used sparingly." (*Lopez, supra*, 246 Cal.App.4th at p. 604.)

Yue has failed to persuade us that the trial court abused its discretion by denying his request for terminating sanctions. The trial court ordered that Yue's requests for Yang to admit he used various online identities were deemed admitted based on Yang's failure to comply with the court's prior discovery order. Yue used these admissions at trial. Yue fails to explain in any detail the subject of the other discovery he requested and to which Yang failed to respond. We find the trial court did not abuse its discretion when it opted to deem admitted the requests for admission and denied Yue's request for terminating sanctions.

## II. *Exclusion of Evidence*

Yue argues the trial court erroneously excluded certain evidence. First, he complains that on the first day of trial, the trial court struck his testimony that some of the users of the ZZB Web site were local California residents who knew Yue personally. As noted *ante*, there is no reporter's transcript of Yue's testimony, which occurred on the first day of trial. The trial court's minute order states that the court struck testimony regarding users being local California residents as it lacked foundation and called for hearsay and speculation. We review the trial court's evidentiary rulings for abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) Yue claims, without citation to any authority, that his testimony was not hearsay. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) ["An appellant must provide . . . legal authority to support his contentions"].) He does not address the trial court's

7

additional bases that the testimony lacked foundation and was speculative. On this record, with only a summary of the testimony in a minute order and no reporter's transcript or settled statement, we cannot find that the trial court abused its discretion by striking Yue's testimony that some of the users of the ZZB Web site were California residents who knew Yue personally.

Yue argues that the trial court erroneously excluded exhibit 18, which he states is a blog post by "iMan" with a photo of Yang's wife. The exhibit is almost entirely in a Chinese language. The trial court did not abuse its discretion in excluding the exhibit. (Cal. Rules of Court, rule 3.1110(g) ["Exhibits written in a foreign language must be accompanied by an English translation, certified under oath by a qualified interpreter"].)

Finally, Yue argues generally that the trial court erred in excluding unidentified "trial exhibits involving Yeyeclub and Liu," which he states the trial court excluded because Yeyeclub was in default and the other defendants had been dismissed. He cites only to the minute order stating which exhibits were admitted and which were not. He provides no discussion of the exhibits he claims were erroneously excluded or case authority supporting his claim of error. Yue has failed to demonstrate an abuse of discretion. (*Benach, supra*, 149 Cal.App.4th at p. 852 ["It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness"].)

## III.   *Entry of Judgment*

Yue's opening brief argues that Yang committed libel per se based upon statements contained in certain exhibits admitted at trial, that he proved damages, and that the trial court misapplied the law and disregarded established facts. We understand Yue's argument to be that the trial court erred in granting the motion for judgment under section 631.8.

8

The purpose of section 631.8 "is 'to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.' [Citation.] Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain his burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in evidence. [Citations.]" (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012.) We review a judgment entered under section 631.8 under the same standards as we review judgments entered after a completed bench trial. (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424–425.) The substantial evidence rule applies to the trial court's factual findings, and we review questions of law independently. (*Ibid.*) The standard is somewhat different when, as here, the issue is whether there was a failure of proof at trial. " '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*).)

We presume the trial court's judgment is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To overcome this presumption, Yue must affirmatively demonstrate prejudicial error based an adequate record. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) Yue has provided the reporter's transcript for the second day of the trial, but there is no reporter's

9

transcript of the first day of trial.  Nor has Yue provided a settled statement, the "viable alternative to a reporter's transcript." (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 933; Cal. Rules of Court, rule 8.137.)  As explained in *Estate of Fain* (1999) 75 Cal.App.4th 973:  "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.*  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error.  [Citation.]  The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Id.* at p. 992.)  With these principles in mind, we consider Yue's claim of error.

Yue argues that Yang, using various online identities, posted messages on ZZB and Yeyeclub that defamed Yue.  He refers to the following four statements contained in trial exhibits 37, 39, 42 and 44:  (1) " 'In a society governed by the rule of law, court orders cannot be disobeyed!'  How well Yue, DNGXIAO said that.  This is a valuable experience gained with so much blood and tears.  Back in the day, Yue savvy disobeyed the court order, and the family was almost thrown out into the street.  I don't know if everyone remembers.  [Emoji]." (*Sic.*)  (2) Yang's statement to Yue that he does not want to communicate with Yue by email because "[a]s you confessed in your Complaint and Motion, you once tried to serve me by using Internet Virus Technique (hiding documents in your own website).  This is outrageous and scared me! [¶] . . . [¶] I have not seen anything which indicates that you might really conducted that kind of illegal service approach except your claim.  In other words, I only know that you tried to serve me by hiding documents in your website because you said so.  I consider it as that you used

10

Internet Virus Technique during the process service. No more, No less."
(*Sic.*) (3) "In the (civil) Complaint and in the Motion to email Summons, shyster YUE openly presented that he used a network virus to send the Summons as evidence (bury the Summons on the page of his website, and as soon as you visit his website, his Trojan horse will be in your computer). This shows how legally illiterate this shyster is! [¶] . . . [¶] Even if the IPS [ISP[4]] company or those who share that IP address do not sue Yue for dropping a virus on them, even if Yang does not counteract Yue slander—Yue distributed Summons and Complaints to all those who share that IP address, Yue DONGXIAO himself can't get rid of the 'cyber hacking' crown. People who have some common sense in the 21st century know that cyber viruses are illegal and criminal. As a televised legal advisor with a Master's in Computer Science, Yue even took this as evidence in court, and put the rope hanging around his neck in front of the judge and the defendant. This man's smart aleck, legal illiteracy and stupidity are really jokes, a state-of-the-art, breathtaking living specimen." (*Sic.*) (4) A document titled "Trojans Virus and Burglary Felony of Yue Dongxiao," stating, "If Yue Dongxiao can send Summons to Y's computer using Trojans Virus as a method, he can send anything to X's computer in the same way. As long as he needs it! For example, a hidden monitor, like a secret radio station for a sleeper agent, which can steal all the data from your computer. [¶] A burglar who climbed in through the window committed Burglary Felony, whether he didn't steal a piece of bread or stole a sack of US dollar bills. According to *California Penal Code Section 461(1)*, the offence to residential theft is first-degree burglary with a sentence of 2-6 years. If you steal nothing, you will have to go to prison for at least two years, and if you steal a sack of US dollar bills, you will

---

[4] Internet service provider.

11

spend up to six years in prison. Life is not fair, but law is. [¶] Definition of Trojans: [¶] Trojans are malicious programs that perform actions that have not been authorized by the user. [¶] So, does Yue's Summons with the Trojans perform action? Of course! And it executed very important actions, such as display on screen, stealing information of your computer's operating system!" (*Sic.*, boldface and capitalization omitted.)

Yue argues that Yang's statements are libel per se; that they were false; that Yang knew they were false; that damages are presumed and that he also proved damages when he presented exhibit 72, a document he prepared which he claims demonstrates that after Yang's statement, Yue's ZZB Web site lost visitors and bloggers.

Yue claims the trial court erred when it found that Yue failed to prove Yang's statements were false because the burden was on Yang to prove truth as an affirmative defense. However, even assuming it was not Yue's burden to prove the falsity of Yang's statements,[5] Yue fails to demonstrate that the trial court erred in finding that Yue failed to prove the elements of defamation. The trial court found there was no evidence Yang's statements were public. Yue argues that the statements were "evidently public." He appears to base his argument on what he claims were user comments indicating that people believed Yang's false statements. He also states, without a record citation, that the fact that he downloaded Yang's posts proves they were public. However, he does not cite to any evidence that he downloaded the posts. He claims he testified that his friends in California

---

[5] "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, (d) unprivileged, and that (e) has a natural tendency to injure or causes special damage.' " (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) However, "[t]he burden of pleading and proving truth is generally on the defendant." (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 646, fn. 5.)

saw the blog posts. As discussed *ante*, Yue argues the trial court erred by striking his testimony as hearsay. We have concluded that based on the incomplete record, we are unable to determine that the trial court abused its discretion in striking Yue's testimony. Similarly, without a reporter's transcript or settled statement regarding Yue's testimony, we are unable to find that Yue presented evidence that was of such a character and weight as to leave no room for the trial court's determination that there was insufficient evidence of the publication element of defamation. (*Sonic, supra*, 196 Cal.App.4th at p. 466; *Estate of Fain, supra*, 75 Cal.App.4th at p. 992.) In other words, Yue provides no basis for us to conclude that the trial court erred in finding that Yue failed to prove Yang's statements were published.

In addition, Yue was also required to prove that Yang failed to use reasonable care to determine the truth or falsity of the statements. (CACI No. 1704.) The trial court also found Yue presented no evidence regarding this element of defamation. Yue's opening brief notes the trial court's finding regarding this element but not does provide any argument as to why it was erroneous.[6]

In sum, based on the record presented, Yue has not carried his burden to affirmatively demonstrate the trial court erred in finding that Yue failed to prove all the elements of his claim. (*Sonic, supra*, 196 Cal.App.4th at p. 466.)

---

[6] Yue also attempts to contest the trial court's finding that some of Yang's statements were insults protected under the First Amendment by stating, without any citations to the record or to case authority, that not all insults are protected speech and generally stating that combining insults with defamatory statements does not negate the defamatory nature of the statement. Yue's generalized argument without citation to authority is insufficient to overcome the presumption of correctness we apply to the judgment. (*Benach, supra*, 149 Cal.App.4th at p. 852 [to overcome the presumption of correctness, appellant must support contentions with reasoned argument and citation to authority].)

## IV.  *Due Process*

Yue complains that the bench trial violated his due process rights in three ways.  First, he contends the trial court advocated on behalf of Yang. Yue claims the following conduct by the trial court supports his claim: (1) The trial court improperly interrupted Yue's testimony on the first day of trial and asked Yang if he had objections to certain trial exhibits.  (2) It interjected during Yang's testimony on the second day of trial to state that Yang testified he did not remember writing a message to Yue, and then, when Yue asked a follow-up question, the trial court stated it had been asked and answered and told Yue to move on.  (3) When Yue offered a trial exhibit which he describes as a "summary of the statistics of ZZB," the trial court admitted it into evidence but also stated, " 'I don't see proper foundation here.' "  (4) At the conclusion of Yue's case, the trial court invited a motion for judgment.

To the extent Yue's argument is based on trial testimony from the first day of trial, the appellate record is incomplete because there is no reporter's transcript or settled statement from the first day of trial.  On an incomplete record, we are unable to find error.  (*Estate of Fain, supra*, 75 Cal.App.4th at p. 992.)  Further, Yue did not raise the issue of a due process violation in the trial court.  Constitutional questions not raised in the trial court are considered waived.  (*Geftakys v. State Personnel Board* (1982) 138 Cal.App.3d 844, 864.)  Even if we were to exercise our discretion to consider the due process issue, we would find that Yue has failed to demonstrate that the trial court's comments during trial testimony, with regard to Yue's exhibit or its invitation for Yang to make a motion for judgment, amounted to a due process violation.  Based on the record provided, it appears that the trial court's statements were made in an effort to control the litigation and conserve judicial resources.  (*Coshow v. City of Escondido* (2005) 132

14

Cal.App.4th 687, 701 ["A court's inherent powers to control litigation and conserve judicial resources authorize it to conduct hearings and formulate rules of procedure as justice may require"]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2023) ¶ 16:31 cmt. ["as a practical matter, a judge may . . . *invite* a motion for judgment to short-cut the proceedings"].)

Second, Yue contends the trial judge showed prejudice regarding what Yue describes as "[t]he episode about the RFAs." Yue states that he previously informed the trial court that a court commissioner had issued a discovery order deeming true the requests for admission that Yang had used various online identifications. On the second day of trial, Yue asked the trial court to take judicial notice of the prior discovery order. Yue's opening brief states that the trial court "reacted by stating that [Yue's] 'failing to do this at the outset is an absurd waste of time'." However, Yue's summary of his exchange with the trial court is misleading and incomplete. The record shows that the trial court first asked Yue for the date of the discovery order so that the court could attempt to locate the document in its file. Yue initially provided an incorrect date, and the court's clerk could not locate the document. Yue then provided the correct date, and the trial court stated that Yue should have included the document as a potential exhibit rather than have the court and the clerk scroll through years of documents in the court's file. When the trial court located the discovery order, it read into the record the various online identifications Yang used on certain Web sites, based on the admissions. The trial court then reconsidered a prior ruling on certain other exhibits offered by Yue and stated, "Based on the newly I'm gonna say discovered admissions, you failing to do this at the outset is an absurd waste of time. But based on that, yes, these are admissible, so 42 and 44, although

15

I ruled them previously inadmissible, are now admitted into evidence." Yue then apologized and stated he was under the impression that the trial court knew the requests for admission had been deemed admitted. The trial court responded that it was Yue's responsibility to bring his case and that "to state that the court doesn't understand what a ruling was previously in a case is absurd. That's not the way you handle a trial." Yue made no objection during this exchange that his due process rights were violated; nor does he explain in his briefing why the trial court's comments amount to a due process violation. Yue's claim is waived and meritless.

Third, Yue argues that the trial court exhibited bias against him when it commented on his legal training. The context of the exchange is as follows. Yang testified that he did not remember writing a message stated in an exhibit Yue presented to Yang. Yue then asked a follow-up question, and the trial court stated: "And you're presuming that Mr. Yang wrote this information. And you're asking him about the substance. He has testified he does not remember if he wrote this or not." Yue responded to the court asking to "have an adversarial proceeding and let Mr. Yang object to whatever questions Plaintiff is asking?" The trial court agreed that Yang was an adversarial witness and further stated that Yue was wasting time and that it was the court's responsibility to see that proceedings are conducted in an orderly fashion. It stated that Yue was "not a lawyer trained in the United States. In fact, you're not a lawyer. You spent a great deal of time yesterday on irrelevant and inadmissible material, and you are attempting to do the same today." Yue told the trial court that he was a member of the California State Bar. The trial court then confirmed the spelling of Yue's name and corrected itself, stating, "Mr. Yue, I stand

corrected; you are a licensed attorney. You're having trouble though, so I'd ask that you proceed in an organized fashion, please."

As with the other alleged due process violations, Yue has forfeited this claim because he did not argue to the trial court that it was exhibiting bias or violating his due process rights. (*Geftakys v. State Personnel Board, supra*, 138 Cal.App.3d at p. 864.) Further, Yue's opening brief does not explain how the above exchange violated his due process rights and, instead, simply states that the trial court's "apparent bias and prejudice were unwarranted." (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156 [conclusory arguments not supported by pertinent legal authority that fail to disclose appellant's reasoning may be disregarded].) While we do not condone the trial court's commenting on Yue's status as a member of the California State Bar or his legal training, the trial court quickly corrected itself and the trial proceeded. Although Yue is a licensed attorney, he represented himself at trial and in his appeal. As an unrepresented party, he is held to the same standards as other litigants. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [unrepresented parties are entitled to no greater consideration than other litigants and attorneys].) Based on our consideration of the incomplete record, it appears that the trial court was attempting to assist the litigants in moving the case forward in an efficient manner. (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 539–542 [recognizing trial court's broad discretion to guide trial, including directing counsel to ask direct questions and avoid wasting time].) Even if Yue had not forfeited his due process claim, he has failed to demonstrate a due process violation.

17

## V.   *Equal Protection*

Under a separate heading, Yue argues the same exchange with the trial court regarding Yue's status as a lawyer violates the equal protection clauses of the California and U.S. Constitutions.  This issue was also not raised below and is therefore forfeited.  (*Geftakys v. State Personnel Board, supra,* 138 Cal.App.3d at p. 864.)  Moreover, Yue has not demonstrated that his trial was conducted in a manner that violated the equal protection clauses.

## DISPOSITION

The judgment is affirmed.  Yue's request for terminating and monetary sanctions against Yang is denied.  Yang shall recover his costs on appeal.

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A168295/*Yue v. Yang*